**In re the Marriage of Richard M. CISEK, Petitioner, Respondent,**

**v.**

**Carol Kies CISEK, Appellant.**

**No. C9-87-179.**

Court of Appeals of Minnesota.

July 7, 1987.

Review Denied Sept. 18, 1987.

Robert L. Barrows, Sidney Barrows, Leonard, Street & Deinard, Minneapolis, for respondent.

Robert N. Schlesinger, Martha E. Hellander, St. Paul, for appellant.

Heard, considered and decided by RANDALL, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from a denial of appellant's motion for increased spousal maintenance, her motion to remove the termination date of her maintenance, and her motion for attorney's fees of $7000.

## FACTS

The Ciseks were married in September 1956. In the same month he married appellant, respondent commenced graduate school. In 1958, he started work with the Minnesota Orchestra as publicity director. In 1960, he became assistant manager, and in 1964 he became general manager. In 1978, he was named president and chief executive officer, the position he holds today.

Prior to her marriage to respondent, appellant was employed as a medical technologist. She continued to work in that capacity at the beginning of the marriage, and later held a part time position as secretary. Appellant quit working in 1970 to take care of the parties' minor children. Her medical technologist registration lapsed during the marriage, and she did not renew it.

Pursuant to a stipulation, the Ciseks' marriage was dissolved in 1972. At the time of the dissolution, the parties had

three minor children, all of whom are now emancipated.

The parties stipulated to the division of property. Respondent received, among other assets, the benefits from his pension plan with the Minnesota Orchestral Association. With respect to maintenance, the parties stipulated to the following:

6. Plaintiff [respondent] shall pay to defendant [appellant] as permanent alimony herein the cash sum of Eighty-seven Hundred and No/100 Dollars ($8,700.00), per year by paying Three Hundred Thirty-four and 61/100 Dollars ($334.61) every other Monday commencing on the first Monday after the entry of the divorce decree, until such time as the defendant remarries, becomes deceased, or plaintiff reaches the age of 65, whichever occurs first, at which time plaintiff shall no longer have any alimony obligation to defendant.

7. Future income, if any, of defendant from any employment whatsoever shall not constitute grounds, in whole or in part, for plaintiff to seek any amendment whatsoever of the Judgment and Decree herein.

Respondent also agreed to pay child support. These provisions of the stipulation were incorporated in the decree.

Since the dissolution, respondent's income increased steadily from $34,000 in 1972 to $140,000, not including a $35,000 bonus received in 1986 for 1985. He also had income from interest and dividends in 1986. He lists monthly income of $12,480 and monthly expenses of $13,729. Respondent has no present intention of retiring. At the time of the motion, he was 57 years old.

Appellant's annual income has fluctuated from a high of $20,441 in 1982, to a low of $8,075 in 1985. Her monthly living expenses have increased from $776 in 1973 to somewhere between $2381 and $2664 in 1986. On May 1, 1986, she had debts of $24,472.19. She sold the marital home that was awarded to her, and used a portion of the proceeds to pay debts. The trial court found appellant still had $20,000 of the proceeds at the time of her motion.

Appellant lost her most recent job, a position selling cosmetics, because sales were decreasing. Her only income at this time appears to be maintenance. The most recent figures available for Carol Cisek Productions, color consultation and cosmetics sales, indicate the business has been operating at a net loss. Appellant is sixty years old.

The referee recommended denial of appellant's motion. On review, the order denying the motion was affirmed.

## ISSUES

1. Did the trial court err by denying appellant's motion for increased maintenance?

2. Did the trial court err by failing to remove the termination date of appellant's maintenance on the basis the motion was premature?

3. Did the trial court err by awarding appellant $750 attorney fees, rather than the $7000 she requested?

## ANALYSIS

### I.

*Increase in Maintenance*

A trial court has broad discretion in determining spousal maintenance and its decision will be affirmed if it has a reasonable and acceptable basis in fact. *Peaslee v. Peaslee*, 400 N.W.2d 447, 448 (Minn.Ct. App.1987) (citing *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn.1983)). Likewise, the decision not to modify maintenance is in the sound discretion of the trial court, and will not be reversed except upon a clear showing of an abuse of discretion. *Fitch v. Fitch*, 298 Minn. 529, 530, 213 N.W.2d 925, 927 (1974). In order for this court to find the trial court abused its discretion, there must have been a clearly erroneous conclusion that is against both logic and the facts on record. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984).

Appellant moved for increase in maintenance pursuant to Minn.Stat. § 518.64 (1986). Under that statute, the court may

modify maintenance or support provisions of a decree

upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; * * * (4) a change in the cost-of-living for either party * * *, any of which makes the terms unreasonable and unfair.

Minn.Stat. § 518.64, subd. 2 (1986). In addition to other relevant factors, the court must apply the factors for an award of maintenance under Minn.Stat. § 518.552 (1986) that exist at the time of the motion. Minn.Stat. § 518.64, subd. 2.

In order for the trial court to modify an award of maintenance, the moving party must show *"both* a substantial change in earnings *and* unfairness of the existing obligation as a result of the change." *Savoren v. Savoren,* 386 N.W.2d 288, 291 (Minn.Ct.App.1986) (emphasis in original).

Here the trial court denied appellant's motion for increased maintenance, based in part on the findings: that it is undisputed respondent's income has risen and is sufficient to meet stipulated maintenance; that the evidence shows that except for the last three years, appellant's income has "risen above that she had at the time of the divorce;" that appellant's claim is based primarily on respondent's increased earnings; and that appellant has not shown the original agreement is unfair and unreasonable. The court concluded that, under *Kaiser v. Kaiser,* 290 Minn. 173, 186 N.W.2d 678 (1971), respondent is not required to supplement appellant's investment income through increased maintenance.

Appellant contends respondent's income has increased by 429% since the time of the dissolution, and that this court should find, as a matter of law, that such an increase is "substantial" within the meaning of section 518.64. *E.g. Lujan v. Lujan,* 400 N.W.2d 443, 445 (Minn.Ct.App.1987) (affirming trial court finding that the parties' respective increases in income of 80% and 400% were substantial); *Scott v. Scott,* 352 N.W.2d 62 (Minn.Ct.App.1984) (finding trial court failed to recognize substantial increase in respondent's income, where increase was 74%).

■ The increase in respondent's income over the period of years in question was substantial. That is not in dispute. However, a favorable change in an ex-spouse's income, absent a showing that the second threshold of Minnesota Statutes § 518.64, subd. 2 (unreasonableness and unfairness) has been met, does not by itself constitute sufficient grounds to change stipulated financial arrangements incorporated in a divorce decree. *Kaiser,* 290 Minn. at 182, 186 N.W.2d at 684. *See also Thielbar v. Defiel,* 378 N.W.2d 643, 645 (Minn.Ct.App. 1985) (wife demonstrating increase in husband's income, but no increase in needs of minor child, was not entitled to modification).

Appellant contends her claim for increased maintenance is not based solely on respondent's increased income but also on her increased needs. Appellant submitted a budget indicating her needs have increased from $775.96 per month at the time of the dissolution to $2,435.52 now. The trial court did not make specific findings reflecting what appellant's needs were in 1972 and what they are now. Increase in need is a statutory factor the trial court is to consider. In *Scott,* 352 N.W.2d at 64, the trial court's finding that a 160% increase in a custodial mother's basic expenses was not a substantial increase making child support award unfair was found to be erroneous.

The court should have made findings on the income and needs of the parties to enable meaningful review. *Bredeson v. Bredeson,* 380 N.W.2d 575 (Minn.Ct.App. 1986). However, taking together the findings made by the trial court on respondent's change of circumstances and the record relating to the parties' listed income and claimed expenses we find an adequate record for appellate review. *See Tuthill v. Tuthill,* 399 N.W.2d 230, 232 (Minn.Ct.App. 1987).

The parties here originally stipulated to the maintenance amount. Generally, courts are hesitant to interfere with such a stipulation.

The fact that the financial rights and obligations of the parties have been fixed in the divorce decree as a result of stipulation is an important consideration restraining, although not controlling, the court's authority.

*Kaiser v. Kaiser*, 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971). *See also Halvorson v. Halvorson*, 402 N.W.2d 168 (Minn. Ct.App.1987) (stipulation is not binding on court, but trial court should exercise discretion carefully and only reluctantly alter terms of stipulation).

The parties stipulated to permanent alimony of $8700 per year in 1972. Respondent claims appellant had an obligation to obtain gainful employment. He contends both parties understood at the time of the dissolution that appellant would go out and get a job, and that the maintenance was only in lieu of a share in his pension benefits. Appellant was custodial parent of three minor children at that time. She claims it was understood she could work if and when she chose to do so, and claims she exercised a proper choice by staying home for a time with her school age children. We agree with appellant on this issue and do not base our decision on respondent's claim that appellant "should have gone to work."

Respondent contends appellant should have gone back into medical technology. Respondent cannot, however, compel appellant to work in a specific job. *Flynn v. Flynn*, 402 N.W.2d 111, 114 (Minn.Ct.App. 1987), *pet. for rev. pending.*

■ Appellant had inquired into reentering the medical technology field after the dissolution, but was discouraged because of her age and outmoded skills. Instead, she held a number of positions, including modeling, public relations, secretarial work, teaching, selling cosmetics, and conducting her own business, which books speakers for special events and provides color counseling services. We do not find any bad faith or neglect in appellant's work history. Also, appellant was awarded permanent maintenance. Generally, an award of permanent maintenance does not imply an obligation by the spouse receiving it to become self sufficient.

[R]ehabilitative maintenance contemplates future self sufficiency of the spouse receiving the award after a period of retraining. A fair reading of the cases and statutory provisions convinces us that similar considerations do not exist when permanent maintenance is awarded. * * * [The spouse receiving maintenance] did not incur an obligation to increase her earning power through occupational retraining.

*Sand v. Sand*, 379 N.W.2d 119, 124 (Minn. Ct.App.1985), *pet. for rev. denied*, (Minn. Jan. 31, 1986).

We base our decision on the trial court's proper analysis of the entire financial picture of both parties, including the stipulation, and the parties' present assets and needs.

■ Here appellant specifically negotiated for a clause in the stipulation allowing her both to receive alimony and go to work immediately after the dissolution or in the future without being penalized. It is true that a stipulation does not constitute a complete bar to a motion for subsequent modification of maintenance under section 518.-64, subd. 2. If either party comes forth with a proper showing of the necessary factors, relief is appropriate despite a stipulation incorporated into the dissolution decree. However, a negotiated stipulation with both parties represented by attorneys carries great weight. By definition, a negotiated stipulation is indicative of the intentions and expectations of the parties and incorporates their respective assessment of their own present and future needs. *See Kaiser*, 290 Minn. at 180, 186 N.W.2d at 683; *Halvorson*, 402 N.W.2d at 172.

■ The stipulation at issue specifically granted appellant maintenance of $8700 annually. Barring appellant's remarriage or the death of either party, appellant bargained for twenty-two years of maintenance, for a total of $191,000. Even if appellant's income had increased dramatically, respondent would only have been entitled to a downward modification of maintenance upon a strong showing that he met

all the statutory factors for modification under section 518.64, subd. 2. This stipulation granting appellant a long term financial base deserves substantial deference by the courts.

During negotiations, appellant knew she was entitled to maintenance, and conducted independent research at the time of the dissolution to determine whether the amount to which she agreed was within the normal range considering the parties' status. Since the parties thoroughly negotiated the stipulation and the unlimited provision for appellant's earnings, we cannot say the trial court erred as a matter of law by finding that the increase in respondent's income alone did not make the terms of the original decree unreasonable and unfair.

## II.

*Failure to remove termination date*

■ The trial court refused to remove the termination date of maintenance, finding the issue to be premature. We agree.

A maintenance award even if classified as permanent is subject to modification at any time during its effectiveness under Minn.Stat. § 518.64 (Supp.1985). *McClelland v. McClelland*, 393 N.W.2d 224, 227 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Nov. 17, 1986). Here the trial court can still modify the maintenance provision of the decree within a year before termination of maintenance. *See id.* Presumably, at that time respondent will be in a better position to determine whether he will be retiring, and whether his income, thus, will be reduced. In the seven years before maintenance is to terminate under the decree, either party's position may change so as to affect the appropriateness of amending the maintenance provision. *See Catania v. Catania*, 385 N.W.2d 28 (Minn.Ct.App.1986) (review of duration of a temporary maintenance award would be premature where it was not clear whether the spouse receiving maintenance would become self sufficient before maintenance was due to terminate); *Wibbens v. Wibbens*, 379 N.W.2d 225 (Minn.Ct.App.1985) (trial court was not required to reserve the issue of maintenance after expiration of

temporary maintenance; appellant could move to reserve maintenance at the time jurisdictional problems would arise, before the maintenance obligation would cease).

## III.

*Attorney fees*

Appellant claims the trial court abused its discretion when it awarded her only $750 of her claimed attorney fees of $7000, as supported by affidavit of appellant's attorney.

■ Attorney fees in a dissolution are within the discretion of the trial court. Minn.Stat. § 518.14 (1986). In making its determination, the trial court must consider the financial resources of both parties. *Kennedy v. Kennedy*, 376 N.W.2d 702, 705 (Minn.Ct.App.1985). Here, the trial court had evidence of the financial resources of both parties. We hold the court did not abuse its discretion by awarding appellant $750.

## DECISION

In view of the negotiated stipulation and its provision for permanent maintenance, the trial court did not err by denying appellant's motion for increased maintenance. The trial court did not err by refusing to remove the termination date of appellant's maintenance, seven years before maintenance was to terminate, on the basis the motion was premature. The trial court did not err by awarding appellant only part of her claimed attorney fees.

Affirmed.