**PERSONALIZED MARKETING SERVICE, INC., Respondent,**

v.

**STOTLER & COMPANY, Respondent,**

**Virgil Albertson, et al., Appellants,**

**Jonathan Piekarski, et al., Respondents.**

No. C9–89–932.

Court of Appeals of Minnesota.

Oct. 31, 1989.

Review Denied Jan. 12, 1990.

Jan Stuurmans, Stuurmans & Karan, P.A., Minneapolis, for appellant.

Personalized Marketing Service, Inc. Moorhead, pro se.

Terrence J. Fleming, Lindquist & Vennum, Minneapolis, for Stotler & Co.

Heard, considered and decided by FOLEY, P.J., and GARDEBRING and LOMMEN *, JJ.

## OPINION

A. PAUL LOMMEN, Judge.

This is an appeal from a judgment of the Clay County District Court, dated February 22, 1989, dismissing the cross-claims of appellants, Virgil Albertson, et al., without prejudice based on the enforcement of a forum selection clause. By order dated June 20, 1989, this court granted discretionary review over this appeal. We reverse.

## FACTS

This procedurally complex action arose out of transactions between numerous farmers and two commodities brokers and between the brokers themselves. Respondent, Personalized Marketing Services, Inc. (PMS), a Minnesota corporation, provided commodities and investment marketing services to its farmer clients located primarily in the Red River Valley of northwestern

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Minnesota and eastern North Dakota. 96 of such clients are appellants in this action.

PMS was an "introducing broker." As such, PMS was not a member of a commodities exchange, but could take trading orders from its clients and have them executed by a broker who was an exchange member. PMS contracted with respondent, Stotler & Company (Stotler), an Illinois general partnership, which was a member of the Chicago Board of Trade and authorized to undertake transactions through the commodities exchange. Under their agreement, Stotler agreed to perform services for the commodities futures accounts of PMS's customers on a disclosed agent basis. Stotler agreed to execute orders placed by PMS for its clients and to handle and account for all such money transactions. PMS agreed to collect margin calls placed by its customers and to pay Stotler in the event that any of PMS's clients liquidated at a deficit. Each of the brokers, however, agreed to be responsible for its own errors in handling customers' accounts or for losses occasioned by breach of contract or negligence. Each of the brokers also agreed to indemnify one another in the event their conduct resulted in liability or claims against the other.

Prior to this litigation, PMS contracted with numerous farmers to furnish commodities hedging advice. Commodities trades ordered by these clients, based upon PMS's advice, were taken by PMS and placed through Stotler. When a farmer contracted with PMS for investment services, the farmer was required to sign a written agreement with PMS. The farmers were also required to sign numerous statements disclosing the risk of commodities transactions and a written customer agreement with Stotler.

PMS informed its clients that it was an introducing broker and that in order for them to conduct commodities trades through Stotler, it was necessary to execute the disclosure forms and the Stotler agreement. The disclosure documents and customer agreement were prepared by Stotler and were not subject to negotiation. Each of the contracts between appellants and Stotler contained a forum selection clause entitled "Consent to Jurisdiction." This clause read in pertinent part:

CONSENT TO JURISDICTION—All actions or proceedings arising directly or indirectly in connection with, out of, related to or from the Agreement or any transaction covered thereby shall be litigated at discretion and election of Stotler and Company ("Stotler"), only in the courts whose situs is located within the State of Illinois.

While PMS told its clients to read the documents, PMS did not specifically draw the consent to jurisdiction clauses to their attention.

This litigation arose out of allegations by PMS and appellants that they suffered losses due to Stotler's mishandling and liquidation of the appellants' accounts during 1987. Appellants allege losses in the aggregate exceeding $1,590,800. PMS claims that such losses provoked many of its clients to close their accounts with PMS and, as a result, that it was damaged.

PMS filed suit against Stotler and 115 of its clients in district court in Clay County. PMS sought damages from Stotler for loss of commissions resulting from its misconduct and a declaratory judgment against PMS's clients to the effect that PMS is not liable for the financial losses they sustained.

In various individual and joint pleadings, appellants counterclaimed against PMS claiming it was liable for their losses. Appellants cross-claimed against respondent, Stotler, claiming it also is responsible for their losses.

On March 3, 1988, Stotler moved the trial court for summary judgment or an order dismissing appellants' cross-claims. Stotler asserted that the forum selection clause in its contract with appellants precluded them from asserting claims against Stotler in any court outside the State of Illinois.

By order dated July 6, 1988, the district court dismissed appellants' cross-claims without prejudice holding that the "Consent to Jurisdiction" clauses in the customer agreements signed by appellants were enforceable.

On August 24, 1988, after first attempting to pursue the claim in Illinois Federal District Court, Stotler filed a compulsory counterclaim against PMS in the Minnesota action asserting claims to collect deficits in appellant's accounts pursuant to the stipulation between Stotler and PMS. PMS answered Stotler's counterclaim and in turn counterclaimed against appellants for indemnity and contribution based on Stotler's claims against PMS to collect the deficits.

On January 9, 1989, appellants served a reply to PMS's counterclaim and reasserted their original cross-claims against Stotler. Stotler subsequently responded by moving to dismiss the cross-claims pursuant to the trial court's order of July 6, 1988, and for entry of judgment.

Appellants subsequently moved the trial court to reconsider its earlier order dismissing their cross-claims. The trial court, however, denied appellants' motion to reconsider and granted Stotler's motion to dismiss appellants' cross-claims. On February 27, 1989, a final judgment was entered dismissing appellants' cross-claims without prejudice. 96 appellants have appealed urging that enforcement of the forum selection clause is unreasonable.

### ISSUES

1. Did the trial court err in dismissing appellants' cross-claims on the ground that it was without discretion to refuse enforcement of the forum selection clause?

2. Is enforcement of the forum selection clause clearly unreasonable such that its enforcement by the trial court would constitute an abuse of discretion?

3. Did Stotler's assertion of a compulsory counterclaim constitute an election to litigate in Minnesota, so as to estop it from requiring appellants' claims to be tried in an Illinois forum?

### ANALYSIS

1. In *Hauenstein & Bermeister v. Met–Fab Industries, Inc.*, 320 N.W.2d 886 (Minn.1982), the Minnesota Supreme Court held that the decision of whether to enforce a forum selection clause falls within the discretion of the trial court. Such an agreement is enforceable, if, in its discretion the trial court, finds it is not unreasonable. *Id.* at 889–90.

Where a trial court has made a ruling which calls for an exercise of discretion, the clear abuse of discretion standard of review applies, and the rulings should not be disturbed unless a clear abuse is shown. *Lamberton v. Lamberton*, 229 Minn. 29, 31–32, 38 N.W.2d 72, 74 (1949). However, if relief lying within the discretion of the trial court was refused on the ground the trial court lacked discretion to grant relief, the decision is erroneous and will be reversed on appeal and remanded with directions to the trial court to exercise its discretion. *In re Slingerland's Estate*, 196 Minn. 354, 357–58, 265 N.W. 21, 23 (1936).

In this case, the trial court's expressed disinclination to enforce the forum selection clause manifested its mistaken belief that enforcement was mandated and thus outside its discretion. Notwithstanding Stotler's arguments that the trial court twice found the forum selection clause valid after reviewing extensive briefing and numerous affidavits and after hearing two oral arguments, the trial court's memorandum accompanying its July 6, 1988 order dismissing appellants' cross-claims indicates that the court refused to grant relief based on an erroneous belief that it lacked discretion to do so. In its memorandum, the trial court stated:

> [I]t does appear to this Court that the farmers did contract with Stotler that if Stotler became involved in a conflict and requested that the matter be heard in Illinois that the farmers had consented thereto. * * * [I]t probably would not be remiss for the Legislature to consider outlawing such provisions * * *. *It is the opinion of this Court that it would be better that all of these matters be resolved in one litigation* both from the standpoint of economy of time and from the standpoint of economy of money * * *

(Emphasis added.)

The trial court's call for the legislature to outlaw forum selection clauses as a

means of remedying their "injustice" and the court's statement that "it had no alternative but to grant the motion," manifest the court's belief that it was without discretion to try appellants' cross-claims.

The trial court agreed with appellants and PMS during oral argument, stating

> I certainly agree with what [counsel] have stated. I find you make sense. *The only thing that I don't know is whether they have to go to Illinois* * * * I do feel that all of these things should be washed in one lawsuit. That's the common sense of the economy and of everybody's time and money.

(Emphasis added.)

The court's statements concerning its lack of knowledge as to whether appellants were required to litigate their cross-claims in Illinois additionally manifest the trial court's erroneous belief that it was without discretion to require the cross-claims to be tried in Minnesota.

2. An issue presented by this appeal, therefore, presuming that the trial court refused to exercise discretion, is whether enforcement of the instant forum selection clause by a trial court would have constituted a clear abuse of discretion.

■ For this court to make such a finding, the forum selection clause must be so unreasonable that its enforcement would be clearly erroneous and against both logic and the facts on record. *Cf. Cisek v. Cisek,* 409 N.W.2d 233, 235 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. Sept. 18, 1987).

The *Hauenstein* court enumerated the factors to be considered in determining the reasonableness of a forum selection clause:

> While any list of reasonableness necessarily requires a case-by-case determination, it is useful to identify those considerations that the court will look to in each case. The elements of unreasonableness can be divided into three categories: (1) the chosen forum is a seriously inconvenient place for trial; (2) the choice of forum agreement is one of

adhesion; and (3) the agreement is otherwise unreasonable.

*Id.* at 890.

■ On the basis of the record in this case, a trial court (in its discretion) could not have found that an Illinois forum would not be seriously inconvenient. In *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 19, 92 S.Ct. 1907, 1918, 32 L.Ed.2d 513 (1972), the United States Supreme Court stated that for the chosen forum to be "seriously inconvenient," one party would have to be effectively deprived of a meaningful day in court.

In this case, appellants argue that they will be unable to prosecute their claims in an Illinois forum due to an inability to effectively join their claims and the prohibitive cost of pursuing the action in Illinois. Appellants claim that an Illinois forum is seriously inconvenient because of the great number of out-of-state witnesses, the great bulk of the evidence located in Minnesota, and financial hardship due to the respectively small size of their claims.

Appellants and Stotler presented affidavits showing the relative backlog of cases in Illinois state and federal district court. Appellants argue that if they were required to pursue their claims against Stotler in Illinois state court, their case would be heard approximately five years hence. Given the hardship associated with this delay, the majority of appellants would be unable to adequately redress their claims and would be effectively deprived of a meaningful day in court. Although the backlog of cases in Illinois federal court is substantially less, few of appellants' claims meet the $50,000 jurisdictional requirement of 28 U.S.C. § 1332 (Supp. V 1988).

Furthermore, the underlying basis of the forum selection clause precludes enforcement of such a provision in this case where Stotler must already defend the action in Minnesota with or without the cross-claims. The rationale of a forum selection clause is to shield the party it purports to protect from the inconvenience of traveling great distances to litigate claims. Here, enforcement of the clause would theoretically result in inconvenience to Stotler by requir-

ing it to defend two separate lawsuits based upon similar claims and common questions of law.

This case may be distinguished from *Hauenstein* because multiple parties with contacts with Minnesota are involved. In *Hauenstein* the action actually being litigated was between a Minnesota party and two Florida parties once default judgments were entered against additional parties with significant contacts with Minnesota. In *Hauenstein* enforcement of the forum selection clause resulted in only one action. In this case all of the parties, except Stotler, are located relatively close to the forum in Clay County, Minnesota. Enforcement of the forum selection clause in this matter would result in two lawsuits involving the same or similar issues creating serious inconvenience.

Necessarily related to the factor of the convenience is the question of whether the agreement of which the forum selection clause is a part is one of adhesion. *Hauenstein*, 320 N.W.2d at 890. In *Hauenstein*, the court stated, "[a] party 'cannot be heard to complain about inconvenience resulting from a contract it freely entered into.'" *Id.* (quoting *Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71, 74 (S.D.N.Y.1978)).

"The inconvenience factor is tied to the question whether the clause was equally bargained for, since the remoteness of the selected forum might suggest the agreement was an adhesive one; 'yet even there the party claiming should bear a heavy burden of proof.'" *Id.* (citing *M/S Bremen*, 407 U.S. at 17, 92 S.Ct. at 1917).

■ "Forum selection clauses in contracts which are termed adhesion—'take-it or leave-it'—contracts and which are the product of unequal bargaining power between the parties are unreasonable." *Id.* at 891 (citations omitted). The mere fact that a forum selection clause is "boilerplate" language contained in a printed form contract does not by itself make the contract adhesive. A contract of adhesion is one

> drafted unilaterally by a business * * * and forced upon [the] public for services

that cannot be readily obtained elsewhere. * * * [T]wo factors for determining whether a contract is one of adhesion are: (1) Was the contract the result of a superior bargaining power of one of the parties? and (2) Was the service involved a public necessity?

*Osgood v. Medical, Inc.*, 415 N.W.2d 896, 899 n. 1 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Feb. 12, 1988) (quoting *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923–24 (Minn.1982)).

■ In this case the record is insufficient to determine whether or not the customer agreement containing the forum selection clause was one of adhesion. The record does not support the second element of *Schlobohm*, that the services obtained by appellants from Stotler "could not be readily obtained elsewhere." *Schlobohm*, 326 N.W.2d at 923–24. Appellants argue that if they wished to hedge against a decrease in the value of their crops and to maintain an existing relationship with PMS, they had no option but to sign the customer agreements prepared by Stotler. The record indicates that appellants were told, "if they do not sign the documents, they cannot trade with Stotler." The record, however, does not indicate whether PMS could have placed trades for appellants through clearing brokers other than Stotler. Likewise, respondent's contention that appellants used a different clearing broker both before and after working with Stotler and that it was just one of several clearing brokers who were able to place appellants' commodities trades is not supported by the record. Because the record is silent as to the availability to appellants of alternative means of placing commodities trades, it is impossible to determine whether the customer agreements were adhesive.

■ The third factor outlined in *Hauenstein* for determining the validity of a forum selection clause is whether the agreement is otherwise unreasonable. In *Hauenstein,* the court recognized that it would be unfair or unreasonable to enforce a forum selection clause where such enforcement " 'would contravene a strong public policy of the forum in which the suit

is brought * * *.'" *Id.* at 891 (citing *M/S Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916).

In *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.,* 308 Minn. 20, 22–23, 240 N.W.2d 551, 553 (1976), the supreme court held that in complex multi-party actions in which some of the parties are contractually bound to arbitrate, the policies supporting arbitration will be balanced against the interests of parties not subject to the arbitration agreement and against the policy behind the Rules of Civil Procedure which encourage the efficient resolution of controversies by facilitating joinder of all related parties and claims. While the *Hauenstein* court refused to extend *Prestressed Concrete* because the action before.it was not a complex, multi-party action, the court did not hold the rationale of *Prestressed Concrete* expressly inapplicable to forum selection clauses. *Hauenstein,* 320 N.W.2d at 891.

In this case the interests of PMS, which is not a signatory to the forum selection clause, and the policy reasons for joining complex claims override Stotler's interest in litigating appellants' claims in Illinois. In this action PMS's claims against Stotler for indemnification are derived from appellants' claims against PMS. Thus, PMS, which is not a party to the forum selection clause, has an interest in having Stotler's liability to appellants determined as part of the pending lawsuit in the district court.

In *Bankers Trust Co. v. Worldwide Transportation Services, Inc.,* 537 F.Supp. 1101 (E.D.Ark.1982) the federal district court refused to enforce a forum selection clause and retained jurisdiction over a party's cross-claim because the claim raised issues already before the court. In the interests of judicial economy the court declined to give full effect to an otherwise enforceable forum selection clause finding a defendant's cross-claim was "inextricably intertwined" with issues raised in the plaintiff's complaint. *Id.* at 1110. Here, appellants' cross-claims similarly are intertwined with PMS's claims against Stotler. Thus, the policy of judicial economy and the prevention of multiple actions on similar issues overrides Stotler's interest in litigating appellants' claims in an Illinois forum and renders the forum selection clause patently unreasonable. Although the trial court refused to exercise its discretion, we reverse, rather than remand, where it clearly would have been an abuse of discretion to enforce the forum selection clause.

 3. The forum selection clause in the Stotler customer agreement states that claims arising out of the agreement, "shall be litigated *at the discretion and election of Stotler and Company* ("Stotler") only in courts whose situs is in the State of Illinois." (Emphasis added.) Appellants argue that the consent to jurisdiction clause relied upon by Stotler in this action does not provide that all litigation involving the contract should take place in Illinois, but rather gives Stotler the choice of whether or not to litigate in Illinois. Appellants contend that because Stotler has elected to litigate in Minnesota by virtue of its counterclaim against PMS, it cannot require appellants to try their claims in Illinois.

Stotler argues that it has not "elected" to litigate its action in Minnesota, but rather contends that Minn.R.Civ.P. 13.01 requires it to assert any compulsory counterclaim in the Minnesota action.

In *Hauenstein,* the supreme court held that the assertion of a counterclaim for contribution and indemnity did not express an intent to waive the forum selection clause. 320 N.W.2d at 892. The court stated, "[t]he assertion of counterclaims and cross-claims is irrelevant to the determination of whether [the party seeking to enforce the claim] waived the forum selection clause." *Id.*

Although appellants argue the issue is one of election rather than waiver, Stotler has not acted inconsistently with its desire to litigate claims in Illinois. A waiver in contract law is "an intentional relinquishment of a known right, and it must 'clearly be made to appear from the facts disclosed.'" *Id.,* 320 N.W.2d at 892 (emphasis omitted) (quoting *Kennedy v. Hasse,* 262 Minn. 155, 159, 114 N.W.2d 82, 85 (1962)).

In *City of Savage v. Varey,* 358 N.W.2d 102 (Minn.Ct.App.1984), this court held a

city's cross-claims for indemnity or contribution derived from a trespass claim did not arise under a contract between the parties and thus did not constitute a waiver of the arbitration clause in the agreement. In this case, Stotler's counterclaim against PMS does not arise out of its agreements with appellants, but rather out of its agreement with PMS, which contains no forum selection clause. Stotler has not waived its right to enforce the forum selection clause. We nevertheless refuse to enforce the provision because it is patently unreasonable.

## DECISION

The trial court erred in refusing to exercise its discretion in this action. Where it clearly would have been an abuse of discretion to enforce the forum selection clause, we need not remand the issue to the trial court.

Reversed.