**INTERFUND CORPORATION,**
Respondent,

v.

**Stuart A. O'BYRNE, Appellant.**

No. C9–90–662.

Court of Appeals of Minnesota.

Oct. 30, 1990.

Peder B. Hong, Red Wing, for appellant.

Steven T. Hetland, Thomas E. Harms, Hessian, McKasy & Soderberg, P.A., Minneapolis, for respondent.

Considered and decided by HUSPENI, P.J., and FORSBERG and SHORT, JJ.

## OPINION

SHORT, Judge.

This case involves a promissory note relating to the sale of an Arabian horse. On appeal from the denial of his motion to dismiss for lack of personal jurisdiction, Stuart O'Byrne argues the forum selection clause at issue is unreasonable, and absent his agreement to personal jurisdiction in Minnesota, there are insufficient minimum contacts to pass constitutional muster. We conclude the forum selection clause is reasonable and affirm.

## FACTS

For financial reasons, O'Byrne purchased his business partner's interest in a thoroughbred horse, Riskie Affair. His partner sold his interest in the promissory note to Interfund Corporation, a company located in Minnesota which holds equine installment sales contracts. In order to facilitate the sale of the note to Interfund in July of 1986, the partners independently modified their original purchase agreement to include many terms from Interfund's standard installment purchase and security agreement. The provision above the signature block in the new promissory note stated:

> This Note is issued in the County of *King*, State of *Washington*, and the execution, delivery and performance hereof are governed by the laws of the State of *Washington*, unless otherwise provided in the hereinabove referred to Installment Purchase and Security Agreement.

Clause 16 in the General Terms section of the note provided that:

> This contract shall be construed and governed by the laws of the state indicated above the signature lines. At the option of Seller, jurisdiction and venue for any dispute arising under or in relation to this contract shall lie only in the Seller's state and county as set forth in paragraph 1 above; provided, however, that if the Promissory Note is assigned by Seller, the laws of the state of the assignee shall be applied at the option of the assignee and any legal proceeding to enforce the terms of the Note and this Agreement may be brought in the state or Federal Court of the assignee, and the Buyer specifically agrees that the proper jurisdiction and venue will be in the county of the assignee, and the Federal District of the assignee.

O'Byrne claims his partner never told him that the July agreement would change the venue provisions of their original contract.

At Interfund's request, both partners signed a letter dated September 28, 1986, which confirmed that "Buyer and Seller of Riskie Affair have read and accept the provisions numbered 7 through 25 on pages 4 through 13 of the contract for sale/purchase of Riskie Affair." As a condition of the purchase of the promissory note, Interfund required the partners to re-execute their contract on Interfund's standard installment purchase and security agreement form in December of 1986. The venue provisions of Interfund's standard form were identical to the venue provisions of the parties' July contract. Interfund then bought the December equine sales contract and promissory note, and notified O'Byrne to make all payments on the note to Interfund.

In May of 1989, O'Byrne defaulted on the note and told Interfund he planned to rescind the contract because his partner had misrepresented the value of Riskie Affair. Interfund filed this lawsuit in Minnesota. When O'Byrne failed to answer, default judgment was entered. O'Byrne moved for relief from the judgment and for dismissal of the action for lack of personal jurisdiction. The trial court vacated the judgment, but denied the motion to dismiss for lack of personal jurisdiction.

## ISSUE

Did the trial court err in exercising jurisdiction over O'Byrne?

## ANALYSIS

An order denying a pretrial motion for dismissal based on lack of personal jurisdiction is appealable as a matter of right. *In re State and Regents Bldg. Asbestos Cases*, 435 N.W.2d 521, 522 (Minn. 1989); *Wheeler v. Teufel*, 443 N.W.2d 555, 556 (Minn.App.1989). Because the decision to enforce a forum selection clause lies within the discretion of the trial court, the trial court's ruling will not be disturbed on appeal absent a clear abuse of that discretion. *See Hauenstein & Bermeister, Inc. v. Met–Fab Indus., Inc.*, 320 N.W.2d 886, 889 (Minn.1982). When the trial court has enforced a forum selection clause, this court will affirm unless the forum selection clause is "so unreasonable that its enforcement would be clearly erroneous and against both logic and the facts on record." *Personalized Mktg. Serv., Inc. v. Stotler & Co.*, 447 N.W.2d 447, 451 (Minn.App.1989), *pet. for rev. denied* (Minn. Jan. 12, 1990).

Parties may contract to submit to the jurisdiction of any court. *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964). A forum selection clause is unfair or unreasonable only if:

(1) the chosen forum is a seriously inconvenient place for trial;

(2) the choice of forum agreement is one of adhesion; [or]

(3) the agreement is otherwise unreasonable.

*Hauenstein*, 320 N.W.2d at 890.

## I.

A forum chosen in a forum selection clause is a seriously inconvenient place for trial only if one party is "effectively deprived of a meaningful day in court." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19, 92 S.Ct. 1907, 1918, 32 L.Ed.2d 513 (1972). The location and convenience of witnesses does not necessarily make a forum seriously inconvenient because deposition testimony can be taken and used without disadvantage at trial. *Hauenstein*, 320 N.W.2d at 890. Inconvenience is only determinative when a party "would be unable to prosecute his claim if the forum clause was enforced." *Id.* A non-protected party's objection to the forum on convenience grounds is rarely successful "because the presumption is that consideration was received at the time of contracting for the alleged inconvenience." *Id.*

In the present case, O'Byrne argues enforcement of the forum selection clause deprives him of a meaningful day in court because he would be unable to pursue his fraud claim. We disagree. O'Byrne can raise a fraud in the inducement defense against Interfund. *See* Minn.Stat. § 336.9–318(1) (1988) (an obligor can raise against an assignee any defense which he has against the assignor which arose before the obligor was notified of the assignment). If his witnesses cannot travel to Minnesota, O'Byrne can use their deposition testimony without disadvantage. *See Hauenstein*, 320 N.W.2d at 890. In addition, O'Byrne also could have his day in court by suing his partner's estate in Washington. While enforcing the forum selection clause may inconvenience O'Byrne, it does not prevent him from pursuing his claims against his partner's estate.

O'Byrne also argues the forum selection clause should not be enforced because he received no consideration for his agreement. This argument is contrary to the record. First, by signing both the July and December agreements, O'Byrne facilitated the sale of the note and thereby improved the value of his joint investments with his partner. Second, O'Byrne voluntarily signed the September acknowledgment letter and the December contract. He cannot now " 'be heard to complain about inconveniences resulting from an agreement [he] freely entered into.' " *Hauenstein*, 320 N.W.2d at 890 (quoting *Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71, 74 (S.D.N.Y.1978)).

## II.

A forum selection clause is unreasonable if contained in an adhesion contract which is the product of disparate bargaining power. *Hauenstein*, 320 N.W.2d at 891. Boilerplate language alone does not

create an adhesion contract. *Personalized Mktg.*, 447 N.W.2d at 452. Instead, the adhesiveness of a contract depends upon factors such as the relative bargaining power of the parties, the opportunity for negotiation, the availability of the service for which the parties contracted, whether the service was a public necessity, and the business sophistication of the parties. *See Hauenstein*, 320 N.W.2d at 891; *Personalized Mktg.*, 447 N.W.2d at 452.

■ There is no evidence either contract at issue was offered to O'Byrne on a "take it or leave it" basis. While O'Byrne may have had to sign the July contract to obtain sole ownership of Riskie Affair, he did not have to sign the September acknowledgment of the contract or the December contract to retain that interest. In fact, it appears as if O'Byrne may have actually had the superior bargaining position when he signed the September acknowledgment and the December contract because he did not need these documents to satisfy his personal financial difficulties as did his partner. Even if O'Byrne needed to sign the new contracts to secure the value of the partners' joint investments, this fact merely shows that the parties had equal bargaining power.

Furthermore, the partners could have refused to sign Interfund's form contract and looked for another finance company to purchase the note. Equine installment contracts and horses are certainly not public necessities. In addition, both partners had business and investment acumen. Under these circumstances, we cannot say the trial court abused its discretion in concluding the forum selection clause was not the product of disparate bargaining power between the parties.

### III.

■ A forum selection clause is otherwise unreasonable if enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Hauenstein*, 320 N.W.2d at 891. Judicial economy and the prevention of multiple actions on similar issues are policies which can render a forum selection clause patently unreasonable. *Personalized Mktg.*, 447 N.W.2d at 452–53. If a defendant's crossclaim is "inextricably intertwined" with issues raised in plaintiff's complaint, the enforcement of a forum selection clause which would separate the claims is unreasonable. *See id.* (quoting *Bankers Trust Co. v. Worldwide Transp. Servs., Inc.*, 537 F.Supp. 1101, 1112 (E.D. Ark.1982)).

■ O'Byrne argues his third-party fraud claim against his partner's estate is so inextricably intertwined with issues raised in Interfund's complaint that separating the two claims by enforcing the forum selection clause would be patently unreasonable. We disagree. In *Personalized Marketing*, this court found that the plaintiff, who was not a signatory to the forum selection clause, had an interest in litigating all of the claims in one lawsuit. 447 N.W.2d at 453. Here, Interfund has no interest in litigating O'Byrne's fraud claim against his partner's estate in this lawsuit.

Moreover, there were strong policy reasons for joining the complex claims in *Personalized Marketing*. That case involved 98 parties aligned into three groups who raised five basic crossclaims and counterclaims in addition to the original claim. *Id.* at 449–50. Enforcing the forum selection clause in *Personalized Marketing* would have forced the trial court to dismiss over ninety crossclaims inextricably intertwined with the main claim. *Id.* The present case is much less complicated. It involves only two parties and two claims. O'Byrne's cause of action is a third-party claim which is not so connected to Interfund's claim that one action is needed to resolve them both. As this case hardly involves the complex multi-party litigation present in *Personalized Marketing*, the enforcement of the forum selection clause does not unreasonably defeat the interests of judicial economy. *See Hauenstein*, 320 N.W.2d at 891.

■ Finally, O'Byrne moved to enlarge the record by submitting additional evidence intended to show Interfund no longer owns the note at issue. Because this evi-

dence was neither presented to nor considered by the trial court, we deny O'Byrne's motion to enlarge the record and have not relied upon this information in making our decision. *See Hoffman v. Halter*, 417 N.W.2d 747, 751 (Minn.App.1988), *pet. for rev. denied* (Minn. Mar. 18, 1988) (appellate review is limited to issues which were presented to and considered by the trial court in deciding the matter before it).

### DECISION

O'Byrne voluntarily submitted to the jurisdiction of Minnesota courts by agreeing to the forum selection clause. In light of our disposition on that issue, we need not address his constitutional challenge to jurisdiction by Minnesota courts. The trial court properly exercised jurisdiction.

Affirmed.