WOODALL, Justice.
Galaxy Mall, Inc., a Utah company, and MicroFinancial, Inc., and its subsidiary, Leasecomm Corporation, Massachusetts companies (the Massachusetts companies *60 will hereinafter be collectively referred to as “Leasecomm”), petition this Court for writs of mandamus directing the trial court to vacate its order denying their motions to enforce outbound forum-selection clauses in contracts between them and Aaron Cobb. We deny the petitions.
On August 22, 2002, Cobb filed a putative class action against Galaxy Mall and Leasecomm. The complaint contained the following pertinent factual averments:
“2. Defendant Galaxy Mall is the entity described herein [that] solicited [Cobb] and [putative] class members to establish a turnkey ‘internet business,’ and offered a purported ‘mentoring program’ for the internet business....
[[Image here]]
“6. On or about November 9, 2000, [Cobb] and other [putative] class members were solicited by representatives of Defendant Galaxy Mall to attend a meeting at the Governor’s House Motel in Montgomery, Alabama, whereby Galaxy Mall representatives provided a presentation of its internet ‘mentoring program,’ which would help small businesses and persons make money [on] the internet by assisting these individuals in establishing a turnkey ‘internet business.’ ...
“7. Galaxy Mall was to set up a market source on the internet for the participants at the meeting. This would include the custom design of a website, listing of online shopping mall sites, marketing support, and other services and materials provided by Galaxy Mall. In Plaintiff Aaron Cobb’s case, he intended to establish an internet business which marketed and sold certain dietary products.
“8. At this meeting, participants [signed] up for the mentoring program [by executing a Galaxy Mall, Inc., order form] for a ‘tuition’ in the amount of $2,995....
“9. Defendant Galaxy Mall, in conjunction with ... Defendants Lease-comm and MicroFinaneial, induced [Cobb] and [putative] class members to purportedly ‘finance’ this tuition in the form of a lease to be paid at a rate of $137 per month for 36 months....
“10. The purported ‘tuition’ for the Galaxy Mall program was payable in the form of a non-cancelable lease agreement [the ‘Lease Agreement’] through [Leasecomm]. The Galaxy Mall representatives present at this meeting had Leasecomm [Lease Agreement] applications and agreements on hand and presented them to [Cobb] and [putative] class members as the only available method to ‘lease’ the ‘tuition’ in this manner....
“11. In truth, these Lease Agreements were not for ‘tuition,’ but rather were for the leasing of certain computer-related equipment from a third party. That is, these Lease Agreements allowed Leasecomm to purchase certain computer-related equipment from a third party and then ‘lease’ the equipment back to the participant. Upon information and belief, [Cobb’s] lease was actually for equipment or software needed to process credit cards on the internet. ... At no time were these facts disclosed to either [Cobb] or the [putative] class members.
“12. The $137 monthly payments were automatically deducted by Lease-comm from [Cobb’s] bank account....
“13. Shortly after [Cobb] and [putative] class members signed up for the purported ‘mentoring program’ and entered into a lease for what was believed to be ‘tuition’ for this program, [they] never heard from Galaxy Mall again. [Cobb] made numerous attempts to con *61 tact Galaxy Mall about the program and market support that Galaxy Mall was to provide, but all to no avail. Moreover, [Cobb] never received any leased ‘equipment’ from Leasecomm or any other defendant.
“14. Because of the Defendants’ scam and Galaxy Mall’s subsequent disappearance, [Cobb] and [putative] class members were stuck with non-cancela-ble Lease Agreements which Lease-comm was aggressively trying to collect on....
“15. Leasecomm made wrongful deductions from [Cobb’s] bank account for the worthless lease for ... over a year. These deductions by Leasecomm included not only the monthly $137 lease payment, but also included certain other bogus and unauthorized charges. Some of the bogus charges include, but are not limited to, a $15 ‘payment charge back fee,’ and a $5 ‘statement billing charge’ simply to send out a bill....
[[Image here]]
“16. The entire artifice and scheme described herein was developed by the Defendants collectively in order to' induce unknowing individuals to enter into certain non-cancelable Lease Agreements for items purchased by Lease-comm and purportedly ‘leased’ back to the individual, then leaving those individuals stuck in a non-cancelable Lease Agreement for an item that is of no use to them.”
The complaint sought compensatory and punitive damages “in an amount not to exceed $74,000 per class member.” Recovery was sought on theories of (1) breach of contract, (2) fraud, (3) fraudulent suppression, (4) conspiracy, (5) theft by deception, (6) conversion, and (7) violation of statutory usury laws.
On October 29, 2002, Galaxy Mall filed a “Motion to Enforce Forum Selection Clause.” The motion was based on a clause on the reverse side of the order form provided by Galaxy Mall and signed by Cobb, which provided: “[T]he parties agree that any and all disputes arising out of this transaction ... shall be resolved in the courts of the State of Utah in the County of Utah or the United States District Court for the State of Utah.” (Emphasis added.) Specifically, the motion stated: “All of Cobb’s allegations against Galaxy Mall arise directly out of the transaction memorialized by the [order form] executed by ... Cobb.... Accordingly, the forum selection agreement entered into by the parties is due to be enforced, and this ease should be dismissed.” (Emphasis added.)
Leasecomm had filed a similar motion on September 25, 2002, based on a forum-selection clause in the lease agreement entered into between Leasecomm and Cobb; that clause provided:
“The Parties hereby ... consent and submit to the exclusive jurisdiction of the Courts of the Commonwealth of Massachusetts and expressly agree to such exclusive forum for the bringing of any suit, action or other proceeding arising out of their obligations hereunder, and expressly waive any objection to venue in any such Courts.... ”
(Some emphasis added; boldface type and some emphasis deleted.) More specifically, Leasecomm’s motion stated:
“Cobb’s lawsuit clearly arises out of the Lease.... Indeed, Cobb’s entire case is asserted to dispute any obligations under the Lease.
“13. Therefore, this Court should enforce the forum selection clause in the Lease, and dismiss this case for improper venue. Cobb should bring this case *62 in Massachusetts pursuant to the forum, selection clause.”
(Emphasis added.)
On April 1, 2003, the trial court denied the motions, stating: “[E]nforcement of either forum selection clause would be unreasonable under the circumstances because the clauses effectively deny [Cobb] and remaining Alabama customers ... their day in court.” More specifically, the court said:
“The court ... finds that enforcement of either clause would be unreasonable because either Massachusetts or Utah would be seriously inconvenient for the trial of this matter. [Cobb] seeks to represent an Alabama only class. The Galaxy Mall presentation where the alleged misrepresentations were made took place in Montgomery, Alabama. Accordingly, all potential class members and material witnesses to the alleged fraud are located in Alabama. These witnesses are arguably beyond the subpoena power of a Massachusetts [or Utah] court. To conduct the trial of a case challenging misrepresentations made to Alabama citizens in a foreign jurisdiction raises serious inconvenience concerns.
“Additionally, forcing [Cobb] to file separate actions on opposite ends of the country when the claims against [all] Defendants (who are named as co-conspirators) are so closely intertwined raises concerns of judicial efficiency. Alabama is the only place where all the transaction elements and participants converge. The evidence indicates that the Defendants are nationally active with employees and lawyers positioned across the country. [Cobb] has offered evidence demonstrating that Lease-comm actually litigates in Alabama when attempting to enforce default judgments obtained against Alabama citizens in Massachusetts.”
These petitions challenge that order.
“[A] petition for a writ of mandamus is the proper vehicle for obtaining review of an order denying enforcement of an ‘outbound’ forum-selection clause when it is presented in a motion to dismiss.” Ex parte D.M. White Constr. Co., 806 So.2d 370, 372 (Ala.2001); see Ex parte CTB, Inc., 782 So.2d 188, 190 (Ala.2000). “[A] writ of mandamus is an extraordinary remedy, which requires the petitioner to demonstrate a clear, legal right to the relief sought, or an abuse of discretion.” Ex parte Palm Harbor Homes, Inc., 798 So.2d 656, 660 (Ala.2001). “[T]he review of a trial court’s ruling on the question of enforcing a forum-selection clause is for an abuse of discretion.” Ex parte D.M. White Constr. Co., 806 So.2d at 372.
At the outset, we note that the issue in this case is not whether an outbound forum-selection clause can be enforced. That issue was settled in Professional Insurance Corp. v. Sutherland, 700 So.2d 347 (Ala.1997). Since then, it has been well established that such a clause will be “upheld unless the party challenging the clause clearly establishes that it would be unfair or unreasonable under the circumstances to hold the parties to their bargain.” Ex parte CTB, Inc., 782 So.2d at 190-91. The showing is sufficient where it is clearly established “ ‘(1) that enforcement of the forum selection clause[ ] would be unfair on the basis that the contract[ ] [was] affected by fraud, undue influence, or overweening bargaining power or (2) that enforcement would be unreasonable on the basis that the chosen ... forum would be seriously inconvenient for the trial of the action.’ ” Id. at 191 (emphasis added). “Inconvenience” sufficient to void a forum-selection clause is present where a “trial in that forum *63 would be so gravely difficult and inconvenient that the challenging party would effectively be deprived of his day in court.” Ex parte Rymer, 860 So.2d 339, 342 (Ala. 2003). See also Sutherland, 700 So.2d at 353-54 (Maddox, J., concurring in the result). “The enforcement of a forum-selection clause creates a serious inconvenience if it would result in two lawsuits involving similar claims or issues being tried in separate courts” Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc., 646 N.W.2d 904, 909 (Minn.Ct.App.2002) (emphasis added). “A forum-selection clause is also unreasonable if its enforcement would contravene a strong public policy of the forum in which the suit is brought.” Id. at 910.
In its mandamus petition, Galaxy Mall states:
“[Galaxy Mall] seeks a writ of mandamus directing the [trial judge] to vacate his order dated April 1, 2003, denying Galaxy Mali’s Motion to Enforce Forum Selection Clause, and to enter an order granting Galaxy Mall’s motion and dismissing the case without prejudice so the claims against Galaxy Mall may be filed in the State of Utah in the County of Utah or the United States District Court for the State of Utah, as set forth in the forum selection clause contained in the contract between [Cobb] and Galaxy Mall.”
Galaxy Mali’s mandamus petition, at 3-4 (emphasis added). Leasecomm, on the other hand, states in its petition:
“The [Lease] Agreement’s exclusive forum-selection clause provides that Cobb’s claims shall be litigated in a Massachusetts court. ...
“Therefore, this Court should issue a writ of mandamus directing the [trial court] to vacate its April 1, 2003, Order denying Leasecomm and MicroFinan-cial’s motion to dismiss this case, and to enter an order dismissing this case based on the mandatory forum selection clause contained in the [ajgreement between Leasecomm and Cobb.”
Leasecomm’s mandamus petition, at 30 (emphasis added).
Elsewhere, Leasecomm argues that the forum-selection clause in Galaxy Mali’s order form, which purports to establish Utah as the forum for claims against Galaxy Mall, does not affect the enforceability of the forum-selection clause in the lease agreement, which purports to establish Massachusetts as the forum for claims against Leasecomm, because, Leasecomm insists, “Cobb signed both contracts, and, upon doing so, it was entirely foreseeable that a dispute involving both defendants might be required to be asserted in two separate forums.” Leasecomm’s mandamus petition, at 24-25 (emphasis added). Indeed, it is undisputed that Galaxy Mall and Leasecomm anticipate the splitting of Cobb’s claims for separate trials against Galaxy Mall and Leasecomm in Utah and Massachusetts, respectively.
Thus, this case involves not one — but two — forum-selection clauses, each purporting to establish venue for the trial of a portion of the plaintiffs case in a different forum. This Court has not addressed a similar issue since Sutherland.
Alabama has a strong policy against splitting causes of action or claims. This policy finds expression in the “liberal joinder of claims and of parties,” Ala. R. Civ. P. 82(c), Committee Comments (emphasis added), which is facilitated by the Alabama Rules of Civil Procedure. The policy promotes judicial economy, as well as convenience and fairness to the parties. See Century 21 Preferred Props., Inc. v. Alabama Real Estate Comm’n, 401 So.2d 764, 769 (Ala.1981) (discussing the rationale for federal pendent jurisdiction). *64 “ ‘ “[T]he whole tendency of our decisions is- to require a plaintiff to try his whole cause of action and his whole case at one time.” ’ ” Id. (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). “The prohibition against splitting a cause of action is for the purpose of avoiding vexatious litigation and a multiplicity of lawsuits.” Terrell v. City of Bessemer, 406 So.2d 337, 339 (Ala.1981).
On similar policy grounds, “courts have held that where a plaintiffs suit is truly broader than the forum selection clause and the structure of the complaint is not an attempt to avoid the forum selection clause, enforcement of the forum selection clause would be unreasonable.” Pegasus Transp., Inc. v. Lynden Air Freight, Inc., 152 F.R.D. 574, 577 (N.D.Ill.1993) (forum-selection clause that purported to require the splitting and remand to state court of some of the plaintiffs claims was unreasonable and therefore unenforceable). See, e.g., Personalized Marketing Serv., Inc. v. Stotler & Co., 447 N.W.2d 447 (Minn.Ct.App.1989), on which Cobb relies.
Stotler arose out of transactions involving Personalized Marketing Services, Inc. (“PMS”), a Minnesota commodities broker; Stotler & Company (“Stotler”), an Illinois commodities broker; and numerous clients of PMS (“the clients”). PMS sued Stotler and the clients, who, in turn, counterclaimed against PMS and cross-claimed against Stotler. 447 N.W.2d at 449. Stot-ler invoked a forum-selection clause contained in “customer agreements” between Stotler and all the clients purporting to require resolution in Illinois of disputes “related to” the customer agreements. Id. Consequently, the trial court dismissed the clients’ cross-claims without prejudice, on the basis of those forum-selection clauses. Id. The clients appealed, contending that “enforcement of the forum-selection clause [was] unreasonable.” 447 N.W.2d at 450.
The Minnesota Court of Appeals reversed, concluding that the clients’ cross-claims against Stotler were “intertwined with PMS’s claims against Stotler,” 447 N.W.2d at 453, and, therefore, that “[e]n-forcement of the forum selection clause ... would result in two lawsuits involving the same or similar issues creating serious inconvenience.” 447 N.W.2d at 452 (emphasis added). The court explained:
“In this action PMS’s claims against Stotler for indemnification are derived from [the clients’] claims against PMS. Thus, PMS, which is not a party to the forum selection clause, has an interest in having Stotler’s liability to [the clients] determined as part of the pending lawsuit in [Minnesota],
“... [T]he policy of judicial economy and the prevention of multiple actions on similar issues overrides Stotler’s interest in litigating [the clients’ cross-claims] in an Illinois forum and renders the forum selection clause patently unreasonable .... ”
447 N.W.2d at 453 (emphasis added). Cf. Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc., 806 F.2d 848 (8th Cir.1986) (refusing to enforce a forum-selection clause, in part because enforcement would result in “piecemeal resolution of [the] case”), abrogated cm other grounds by Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989).
To be sure, Stotler did not, as Galaxy Mall points out, involve competing forum-selection clauses, as does this case. However, that distinction is not significant. By affidavit, Cobb stated:
“I attended a meeting on November 9, 2000, at the Governor’s House Motel in Montgomery, Alabama, along with several other participants. At this meeting, Galaxy Mall representatives provided a *65 presentation and offered to set up a ‘market source’ on the internet for the participants, which included the custom design of a website, marketing support, consultation, and other services and materials provided by Galaxy Mall. These representatives told the participants that the total cost or ‘tuition’ for the program was $7,270.00, but that if we agreed to sign up for the program that day, we could take advantage of the limited ‘special offer’ and receive the ‘tuition’ for just $2,995.00.
“These representatives told us that we had been specially ‘pre-approved’ to finance this tuition with monthly payments, but that this offer of financing would not be valid unless we acted on the special offer that day. We were also told that the price of this program would go up if we did not act on the ‘special offer’ that day....
[[Image here]]
“These Galaxy Mall representatives had the [Leasecom/m] applications and agreements on hand in order for us to receive the financing in the manner offered. These representatives stated that this was the only available method to finance the ‘tuition’ in this manner. These representatives never explained the financing arrangement or the lease agreement, nor was there ever any mention of a lease for equipment or for a ‘license’ from a third party. I did not know, and never understood, that I would actually be leasing a ‘license’ needed to process cards on line from a third party. Had I known that the representations made to me by these Galaxy Mall representatives were false, I would not have signed up for the mentoring program and certainly would not have agreed to the offer of financing.”
(Emphasis added.)
Galaxy Mall and Leasecomm do not dispute that the purpose of the lease agreement was to finance the participants’ transactions with Galaxy Mall. Indeed, Leasecomm describes its role as that of a “finance lessor of business software and equipment.” Leasecomm’s mandamus petition, at 1. Leasecomm further states: “On November 9, 2000, [Cobb] attended [a workshop] where Galaxy Mall promoted its virtual storefront operation.... It is undisputed that during that workshop, Cobb executed a [lease agreement].... ” Thus, it must be conceded that the execution of the order form- and the lease agreement constituted a single transaction.
The claims against Galaxy Mall and Lea-secomm are, therefore, inextricably inter-tunned, as were the claims in Stotler. In fact, enforcement of the forum-selection clauses in this case would split the claims and require litigation of the intertwined issues in forums far removed, not only from Alabama, in which the cause of action arose, but from each other. The policy considerations underlying Stotler weigh heavily against enforcement of the forum-selection clauses in this case. Galaxy Mall and Leasecomm cite no published case enforcing two or more outbound forum-selection clauses, thereby splitting claims arising out of a single transaction. Certainly, Clinton v. danger, 583 F.Supp. 284 (N.D.Ill.1984), cited by both petitioners, is not such a case.
The complaint filed in Clinton challenged the administration of three trust agreements, which were executed in 1968 (“Trust One”), 1979 (“Trust Two”), and 1981 (“Trust Three”). Each of the agreements named a different trustee, and each contained a unique forum-selection clause. Id. at 286. Trust One purported to establish venue in the Bahama Islands; Trust Two in Jersey, Channel Islands; and Trust Three in Guernsey, Channel Islands. *66 Id. Thus, unlike this case, the dispute in Clinton arose out of a “related series of occurrences,” 583 F.Supp. at 288 (emphasis added), spanning approximately 13 years.
The defendants in Clinton, which included former trustees, moved to dismiss the action, pursuant to Fed.R.Civ.P. 12, on the bases of the three forum-selection clauses in their respective trust agreements. 583 F.Supp. at 286. In considering the motions to dismiss, the district court stated:
“The only decision to be made now is whether any alternative forum is reasonable, not specifically whom can be brought into the forum finally chosen. If there is at least one foreign forum which is reasonable, the dispute should not be prosecuted in this District. The plaintiffs will remain free to reinstitute proceedings in that foreign forum, or anywhere else that they believe is proper. Whether there is jurisdiction over all defendants in the foreign forum selected by the plaintiffs will be a question for that court to decide.”
583 F.Supp. at 289 (emphasis added). The district court found that “at least one, if not all, of the forum selection causes [was] reasonable.” 583 F.Supp. at 290. Consequently, it dismissed the action “without prejudice to the right of the plaintiffs to attempt to refile it in another forum.” 583 F.Supp. at 290.
Contrary to the proposition for which Galaxy Mall and Leasecomm cite Clinton, the Clinton court did not split and disperse, geographically, the plaintiffs’ claims. Because it merely dismissed the action, the trial court specifically enforced no particular forum-selection clause. Indeed, part of the court’s purpose in dismissing the action was to prevent claim splitting. Specifically, the court stated:
“[I]f this suit were to remain within this District, several of the defendants ... have argued that no jurisdiction exists over them here due to insufficient contacts. If that is true, the plaintiffs either would have to split their suit among at least two courts or [forgo] some of the claims against certain defendants.”
583 F.Supp. at 288 (emphasis added). In short, Clinton provides little support for enforcement of the forum-selection clauses in this case.
Street, Sound Around Electronics, Inc. v. M/V Royal Container, 30 F.Supp.2d 661 (S.D.N.Y.1999), cited by Leasecomm, is also distinguishable. That case involved an action for “misdelivery and/or nondelivery of five shipments of merchandise delivered on three occasions to defendants in Hong Kong for transport to Brazil.” 30 F.Supp.2d at 662 (emphasis added). It involved a single foreign forum. More significantly, the bill of lading for each shipment contained a “Himalaya clause,”[1] which, the court explained, would prevent case splitting, 30 F.Supp.2d at 663, such as would result from enforcement of the forum-selection clauses in this case.
In summary, the trial court in this case held that enforcement of the outbound forum-selection clauses would be “seriously inconvenient,” and “unreasonable under the circumstances.” Cobb’s claims arise out of a single transaction consummated in Alabama. The order form and the lease agreement were printed forms, drafted by Galaxy Mall and Leasecomm, respectively, *67 each purporting simultaneously to establish venue in different states. Because of the roles assumed by Galaxy Mall and Leasecomm in the presentation of the order form and lease agreement to Cobb and the other participants in the meeting, the claims against them are inextricably intertwined. Enforcement of the forum-selection clauses — as requested by Galaxy Mall and Leasecomm — would result in splitting the claims for trial in two foreign, remote states, contrary to the policy of this State in favor of liberal joinder of parties and claims for resolution in one action. Under the circumstances of this case, we cannot conclude that the trial court exceeded its discretion in denying the petitioners’ motions. The petitions are, therefore, denied.
1021281 — PETITION DENIED.
1021308 — PETITION DENIED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.

. "A Himalaya clause is a clause in a bill of lading that extends the carrier's defenses and limitations of liability under the bill to the carrier’s agents and subcontractors.” James N. Kirby, Pty Ltd. v. Norfolk Southern Ry., 300 F.3d 1300, 1302 (11th Cir.2002), cert. filed (January 6, 2003). "Himalaya clauses take their name from an English case which involved a vessel called the HIMALAYA.” 300 F.3d at 1302 n. 1.