**NORTHWEST AIRLINES, INC., Appellant,**

v.

**H. Louise FRIDAY, Respondent.**

No. C1–00–528.

Court of Appeals of Minnesota.

Sept. 26, 2000.

Timothy R. Thornton, Paul C. Thissen, Briggs and Morgan, Minneapolis, for appellant.

Gregg M. Corwin, Gregg M. Corwin & Associates, St. Louis Park, for respondent.

Considered and decided by SCHUMACHER, Presiding Judge, KLAPHAKE, Judge, and HALBROOKS, Judge.

## OPINION

SCHUMACHER, Judge

Appellant Northwest Airlines, Inc. sued respondent H. Louise Friday for defamation and business disparagement. The district court dismissed Northwest's suit on the grounds that the court lacked personal jurisdiction over Friday on the defamation claim and that Northwest had failed to state a claim on which relief could be granted on the disparagement claim. We affirm and grant Friday's motion to strike certain materials in Northwest's appendix.

## FACTS

Friday, a Washington state resident, is married to Craig Friday, a Northwest pilot. Craig Friday repeatedly complained to Northwest, the pilots' union, the FAA, and perhaps others that Northwest was committing various safety violations. Northwest eventually required Craig Friday to undergo a psychiatric evaluation to determine whether he was mentally fit to continue flying. The psychiatrist found that Craig Friday was unfit for duty as a commercial aviator.

The Fridays sued Northwest for "whistleblower retaliation; humiliation; defamation; emotional distress; ADA violations and harassment," alleging that Craig Friday was fit to fly and Northwest's actions to the contrary were taken in retaliation for his numerous complaints about Northwest's unsafe practices. Louise Friday sent out a press release by e-mail from Washington that repeated many of the lawsuit's allegations and attached an electronic copy of the complaint. In response, Northwest sued her for defamation and business disparagement. Northwest alleged in its complaint that the "press release was issued in Minnesota and elsewhere," and that it was "picked up by newspapers that are published in the Twin Cities." In an affidavit, Friday admitted that the "e-mail was addressed to individuals in various cities throughout the country, and one or more of the addressees was located in Minnesota." In her affidavit, she also averred that she owns no property in Minnesota, transacts no business here, is not employed here, and has only been in Minnesota once in the past few years, and that was only to change airplanes.

## ISSUES

1. Did the trial court err by dismissing Northwest's defamation claim for lack of personal jurisdiction over Friday?

2. Did the trial court err by dismissing Northwest's business disparagement claim for failure to state a claim on which relief could be granted?

## ANALYSIS

1. The existence of jurisdiction is a question of law we review de novo. *Stanek v. A.P.I., Inc.*, 474 N.W.2d 829, 832 (Minn.App.1991), *review denied* (Minn. Oct. 31, 1991). When reviewing a pretrial order dismissing for lack of personal jurisdiction, we take the plaintiff's allegations and evidence supporting jurisdiction as true. *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). In doubtful cases, we resolve the jurisdictional question in favor of retaining jurisdiction. *Id.* at 296, 240 N.W.2d at 818.

Personal jurisdiction over a nonresident defendant must be authorized by the Minnesota long-arm statute and must not violate the federal due process requirement that the nonresident defendant have certain "minimum contacts" with the forum state. *Domtar, Inc. v. Niagara Fire Ins. Co.*, 533 N.W.2d 25, 29 (Minn.1995). Although both state and federal law must be satisfied, the Minnesota Supreme Court has interpreted the long-arm statute in such a way that "when analyzing most personal jurisdiction questions, Minnesota courts may simply apply the federal case law" on minimum contacts. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn.1992). This case, however, is an exception to that general rule, requiring us

to interpret a little-used provision in our long-arm statute.

■ The Minnesota long-arm statute provides in part as follows:

Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, or the individual's personal representative, in the same manner as if it were a domestic corporation or the individual were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or nonresident individual:

(a) Owns, uses, or possesses any real or personal property situated in this state, or

(b) Transacts any business within the state, or

(c) Commits any act in Minnesota causing injury or property damage, or

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, *subject to the following exceptions when no jurisdiction shall be found:*

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice; or

(3) *the cause of action lies in defamation or privacy.*

Minn.Stat. § 543.19, subd. 1(1998) (emphases added). Thus, according to the plain terms of the statute, when an act is committed outside Minnesota that causes injury inside the state, and the cause of action asserted is defamation or privacy, there is no personal jurisdiction over the nonresident defendant. *Paulucci v. William Morris Agency, Inc.*, 952 F.Supp. 1335, 1342 (D.Minn.1997) (defamation "case presents one of the statute's anomalies, and falls outside 'most' of the jurisdic-

tional questions"). As a result, the central issue in this case is whether, by sending "one or more" allegedly defamatory e-mails to Minnesota recipients, Friday committed an "act in Minnesota" or an "act outside Minnesota." *Compare* Minn.Stat. § 543.19, subd. 1(c), *with* Minn.Stat. § 543.19, subd. 1(d)(3).

■ Friday argues that the decision in *Wheeler v. Teufel*, 443 N.W.2d 555 (Minn. App.1989), answers that question and controls this case. In *Wheeler*, the plaintiff sued the defendant for defamation based on statements made by the defendant in several telephone calls from Arizona to persons in Minnesota. We reasoned that

[a]t a minimum, two actions are required to complete the tort of slander—one person must act by speaking the defamatory words, while another must act by hearing them, to the injury of a third party.

*Id.* at 557. We concluded that the act of the defendant in making the allegedly defamatory statement was the operative act for the purpose of determining whether the act was "in Minnesota" for the purpose of the long-arm statute. *Id.* Interpreting that statutory language, we examined the legislative history of the amendment that added the current text of § 543.19, subd. 1(d)(3) and noted:

Proponents of the amendment stated, for example, that the act of mailing a defamatory letter into Minnesota is such a minimum type of contact that in and of itself it might constitute unfairness against the letter writer if personal jurisdiction could be asserted in this state. Hearings on H.F. 2159 Before the Subcommittee on Governmental Administration, Feb. 21, 1978.

*Wheeler*, 443 N.W.2d at 558. Reasoning that making telephone calls to Minnesota from another state was analogous to mailing letters to Minnesota from another state, we held that making allegedly defamatory phone calls from Arizona to

Minnesota was not an "act in Minnesota" for purposes of the long-arm statute. *Id.*

Northwest takes issue with what it calls *Wheeler*'s "false dichotomy" between the making of the defamatory statement and its receipt by a third party, arguing that

> [d]efamation does not focus on the "receipt" of a defamatory statement. Rather, the two requisite acts are (1) a false and defamatory statement, and (2) the publication of that statement to a third-party. And both of those predicates are acts of the defamer, not the recipient. Consequently, the transmission of defamatory material into the State is an "act" in Minnesota.

■ ■ But "'[p]ublication' is a term of art in defamation law expressing one of the elements of that tort." *Church of Scientology v. Minnesota State Med. Ass'n Found.*, 264 N.W.2d 152, 156 (Minn.1978). And despite Northwest's contention to the contrary, the "receipt" of a statement is crucial to whether it is defamatory. For a statement to meet the legal standards for defamation, "it must be communicated to someone other than the plaintiff." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). For a defamatory statement to be "communicated" to a third party, it must be understood by that third party. *Glatz v. Thein*, 47 Minn. 278, 279, 50 N.W. 127, 127 (1891) ("communication [must be] sent by defendant to a person who read and understood it"); *see also Griffin v. Pinkerton's, Inc.*, 173 F.3d 661, 665 (8th Cir.1999) (applying Minnesota law; finding no publication because allegedly defamatory report was not read by any third party). The "publication" of a defamatory statement, therefore, does indeed require two "acts": the act of the alleged defamer in making the statement, and the act of a third party in understanding it. Given this fact, our decision in *Wheeler* properly focuses on the act committed by the defendant—making the allegedly defamatory statement—as the operative "act" for purposes of determining jurisdiction under the long-arm statute.

■ The language of the long-arm statute supports this interpretation. The statute provides jurisdiction over a defendant who "[c]ommits any act" in or outside Minnesota, with certain exceptions, including the defamation exception relevant here. Minn.Stat. § 543.19, subds. 1(c), 1(d)(3). Northwest argued, both in its brief and at oral argument, that an act occurred in Minnesota with the publication of Friday's allegedly defamatory statements. But the long-arm statute does not require that an act *occur* in Minnesota; it requires that a defendant *commit* an act in Minnesota before jurisdiction is conferred without exception. Northwest's argument that we must focus on publication because it is an essential element of the tort of defamation similarly misses the mark, because the statute does not provide jurisdiction over those who commit a *tort* in or outside Minnesota, but rather over those who commit an *act* in the state. Indeed, the legislature amended the long-arm statute in 1978, removing the word "tort" from subdivision 1, paragraphs (c) and (d), and replacing it with the word "act." 1978 Minn. Laws ch. 780, § 2.

The standard legal dictionary defines the verb "commit" to mean "to perform as an act." *Black's Law Dictionary* 248 (5th ed.1979). General dictionaries agree. *See, e.g., American Heritage Dictionary* 380 (3d ed.1992) ("[t]o do, perform, or perpetrate"). The act that Friday performed was sending allegedly defamatory e-mail press releases. When she committed that act, she was in Washington, not Minnesota. Because Friday committed an act outside Minnesota that allegedly caused damage inside the state, the relevant provision of the long-arm statute is subdivision 1(d), with its explicit exception for defamation actions. As a result, the district court was correct to conclude that it lacked personal jurisdiction over Friday for Northwest's defamation claim.

Although Northwest argues that "the phenomenon and power" of the Internet

justifies a different result, it has failed to demonstrate why that should be so in this case. This case involves "one or more" individually sent and received e-mails, which, as the district court cogently observed, are "just electronic mail." Northwest has provided no reason why the fact that the letters in this case were sent by e-mail should cause a different result than if they were sent by traditional mail. The legislature obviously did not have the Internet in mind when it drafted the long-arm statute, and the legislature may well wish to reconsider the statute in light of "the phenomenon and power" of the Internet. Such considerations, however, are not relevant in this case, and our decision is the result of a straightforward application of the long-arm statute and relevant caselaw.

In the alternative, Northwest argues that it is entitled to jurisdictional discovery to determine the exact number of e-mail press releases Friday sent to Minnesota, as well as any other Minnesota connections she may have. Northwest, however, only raised this request in a footnote before the district court, and the court did not consider or decide it. We therefore will not consider it. *See Thiele v. Stich,* 425 N.W.2d 580, 582–83 (Minn.1988) (appellate court generally will not consider matters not argued and decided in court below).

■ 2. The district court also dismissed Northwest's business disparagement claim for failure to state a claim on which relief could be granted. Northwest claimed that Friday violated Minn.Stat. § 325D.44, subd. 1(8) (1998), which provides:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person * * * disparages the goods, services, or business of another by false or misleading representation of fact * * *.

Northwest argues that Friday sent the press releases as part of her "vocation," defined as "a summons or strong inclination to a particular * * * call to action,"

because Friday sent the press releases as part of her "crusade" against Northwest. Northwest argues that the word "vocation" in the statute cannot be understood as meaning "the work in which a person is regularly employed," because to interpret it in that manner would be to render it superfluous, in violation of accepted canons of statutory construction. *See Boutin v. LaFleur,* 591 N.W.2d 711, 716 (Minn.1999) (statute must be construed so that all terms have meaning).

■ But the "object of statutory interpretation is to ascertain and effectuate legislative intent." *Id.* at 715. Northwest's argument fails because its interpretation is plainly at odds with the purpose of the statute. The statute is entitled "Deceptive Trade Practices" and is clearly aimed at events occurring in the course of trade or business. *See Essling v. Markman,* 335 N.W.2d 237, 240 n. 2 (Minn.1983) (title of statute may be considered as indicator of legislative intent). Indeed, Northwest's own complaint calls its cause of action *"Business* Disparagement." Northwest may not take three words out of the context of the entire statute and interpret one of them in a way to defeat the purpose of the statute taken as a whole.

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. *Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.*

*Wegener v. Commissioner of Revenue,* 505 N.W.2d 612, 615 (Minn.1993) (quotation and citation omitted; emphasis added). Northwest's interpretation of "vocation" produces an unreasonable result plainly at variance with the statute as a whole. The district court was correct to dismiss this claim.

3. Finally, Friday moves to strike two items included in Northwest's appendix as outside the scope of the record below. We reject Northwest's arguments why we should consider these materials and grant Friday's motion.

## DECISION

The district court correctly dismissed Northwest's defamation claim for lack of personal jurisdiction over Friday and its business disparagement claim for failure to state a claim upon which relief could be granted. We grant Friday's motion to strike certain materials from Northwest's appendix.

**Affirmed; motion granted.**