**ALPHA SYSTEMS INTEGRATION, INC., Appellant,**

v.

**SILICON GRAPHICS, INC., et al., Respondents.**

**No. C7–01–2228.**

Court of Appeals of Minnesota.

July 16, 2002.

Michael R. Quinlivan, Bethan M. Davies, Cronan Pearson Quinlivan, P.A., Minneapolis, MN, for appellant.

Ralph V. Mitchell, Lapp, Libra, Thomson, Stoebner & Pusch Chartered, Minneapolis, MN, for respondents.

Considered and decided by SCHUMACHER, Presiding Judge, PETERSON, Judge, and SHUMAKER, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant reseller sued its former supplier for various contract-related claims. The district court dismissed the claims for lack of personal jurisdiction, enforcing the forum-selection clause in the parties' reseller authorization. Appellant contends

that (a) its claims are outside the scope of the clause; (b) litigating its claims in California as required by the clause would be seriously inconvenient; (c) the adhesive nature of the reseller authorization renders enforcement of the clause unreasonable; and (d) enforcement of the clause requiring a second suit in California would contravene public policy favoring a unified resolution of multi-party disputes. We affirm.

## FACTS

In June 1998, appellant Alpha Systems Integration, Inc., a Minnesota corporation, and respondent Silicon Graphics, Inc. (SGI), a California-based corporation, signed a reseller agreement. This agreement made appellant an authorized, non-exclusive reseller of SGI's computer products. In December 1998, the parties renewed the agreement, and in February 2000, the parties again renewed, this time by signing a contract entitled "Indirect Reseller Authorization" (Authorization). This contract contained a forum-selection clause providing that

> [i]n the event that any dispute or controversy between the parties arises out of or is related to this Authorization, and/or performance or termination thereof, such dispute or controversy shall be subject to the exclusive jurisdiction of the California state courts in and for Santa Clara County, California.

In February 2001, appellant terminated the relationship, and in March 2001, appellant filed suit against SGI and its salesman, respondent Brett Vieillard. The complaint alleged (1) breach of contract; (2) tortious interference with contract; (3) tortious interference with prospective business/contractual obligations; (4) unjust enrichment; (5) trade-secret violations; and (6) common-law misappropriation of confidential information. Appellant claimed

that the parties entered into a separate contract (Account Agreement), giving appellant exclusive customers, and that Vieillard wrongfully sold SGI's products to those customers. Respondents moved to dismiss for lack of jurisdiction, and in November 2001, the district court dismissed the complaint without prejudice based on the forum-selection clause.

## ISSUES

I. Do appellant's claims arise out of or relate to the Authorization and its forum-selection clause?

II. Did the district court abuse its discretion in enforcing the forum-selection clause?

## ANALYSIS

### I.

■ Whether a forum-selection clause applies is a question of law, which this court reviews de novo. *See Northwest Airlines, Inc. v. Friday*, 617 N.W.2d 590, 592 (Minn.App.2000) (stating that the existence of personal jurisdiction is a legal question); *see also Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 692 (8th Cir.1997) (stating that whether a forum-selection clause applies to a plaintiff's claims is a question of law).

■ Respondents contend that appellant has the burden of producing evidence to show that the clause does not apply because forum-selection clauses are presumptively valid. But appellant only has the burden of proving the clause unreasonable, not proving that it applies. *See Hauenstein & Bermeister, Inc. v. Met–Fab, Indus., Inc.*, 320 N.W.2d 886, 891 (Minn.1982) ("it is incumbent upon the party seeking to escape the contract to show that to be forced to litigate in the contractual forum would be unreasonable"). Generally, the party asserting the applicability

of a contract bears the burden of proof. 17B C.J.S. *Contracts* § 698 (2000).

Appellant argues that this court must assume appellant's factual allegations in the complaint and affidavits as true when deciding whether the forum-selection clause should apply. *See Northwest Airlines, Inc.,* 617 N.W.2d at 592 (stating that, when reviewing a pretrial order dismissing a claim for lack of personal jurisdiction, this court considers the plaintiff's allegations and evidence supporting jurisdiction to be true and in doubtful cases resolves jurisdictional questions in favor of retaining it). Respondents assert that a motion to dismiss for lack of jurisdiction based on a forum-selection clause is unlike rule 12 or rule 56 motions, where the court must consider the plaintiff's allegations to be true, and respondents also contend that appellant's Account Agreement is not a valid contract. *See Durdahl v. Nat'l Safety Associates, Inc.,* 988 P.2d 525, 528 (Wyo. 1999) (stating that the party challenging enforcement of forum-selection clause must bring forth evidence justifying non-enforcement and that the court will not assume that the pleadings are true). But respondents moved to dismiss pursuant to Minn. R. Civ. P. 12.02(a); and even if we assume appellant's allegations are true, we conclude that the forum-selection clause applies to appellant's claims.

█ Appellant principally argues that its claims arise out of the Account Agreement—not the Authorization—and thus the forum-selection clause should not govern its claims. But the language of the forum-selection clause covers "any dispute or controversy between the parties [that] arises out of or is related to this Authorization, and/or performance or termination thereof." The Authorization created and defined the parties' entire business relationship by authorizing appellant to resell SGI's products. A plain reading of the

forum-selection clause leads us to conclude that any dispute arising out of "performance" of the Authorization must include sales-related disputes, such as disputes over customers. In particular, appellant's claims are based on a right to resell SGI's products exclusively to certain customers—a right bargained for in the Account Agreement. But this exclusive right could not exist without the basic right to resell SGI's products as granted in the Authorization. Because appellant's claims based on the Account Agreement amount to a dispute based on appellant's right to resell SGI's products, appellant's claims arise out of and relate to the Authorization and are thus governed by the forum-selection clause.

Thus, counts one through four of the complaint—breach of the Account Agreement, tortious interference with the Account Agreement, tortious interference with prospective business/contractual obligations, and unjust enrichment—directly arise out of the right to resell SGI's products. Counts five and six, moreover, allege misappropriation of confidential information and trade-secret violations based on respondents' alleged wrongful use of the Account Agreement; thus, they too relate to the Authorization. *See Terra,* 119 F.3d at 695 (stating that, when claims involve the same facts as would give rise to a breach of contract implicating a forum-selection clause, the clause covers such claims). Although appellant did not allege a breach of the Authorization, all of its allegations are premised on the right to resell SGI's products—a right conferred on appellant by the Authorization and therefore governed by the forum-selection clause.

Appellant contends that the Authorization neither imposed any contractual obligations on respondents nor provided appellant with any rights. Appellant claims

that it could never have sued respondents under the Authorization "under any circumstances." But the Authorization was not illusory because it gave appellant the right to resell SGI's products. Appellant could have sued SGI if SGI had wrongfully refused to sell its products to appellant during the term of the agreement. Appellant also claims that the Authorization "clearly and unambiguously excludes any claims" that do not rely on it for recovery or that the forum-selection clause is at least ambiguous. A plain reading of the Authorization reveals that the forum-selection clause is not ambiguous and that it governs any dispute arising out of appellant's right to resell SGI's products.

## II.

 Whether to enforce a contract's forum-selection clause lies within the sound discretion of the district court. *Personalized Mktg. Serv., Inc. v. Stotler & Co.*, 447 N.W.2d 447, 450 (Minn.App.1989), *review denied* (Minn. Jan. 12, 1990). When a district court has enforced a forum-selection clause, this court will reverse only if the clause is "so unreasonable that its enforcement would be clearly erroneous and against both logic and the facts on record." *Id.* at 451.

 When parties agree to bring contract disputes in a particular forum, courts generally enforce that agreement unless the party seeking to avoid the contractual forum shows that the agreement is unfair or unreasonable. *Hauenstein*, 320 N.W.2d at 890 (Minn.1982). A forum-selection clause is unfair or unreasonable if (1) the chosen forum is a "seriously inconvenient" place for trial; (2) the agreement containing the forum-selection clause is a contract of adhesion; or (3) the agreement is "otherwise unreasonable." *Id.*

### a. *Seriously inconvenient forum*

 The chosen forum is seriously inconvenient if, by litigating there, one party would be "effectively deprived of a meaningful day in court." *Id.* (quotation omitted). Location and convenience of witnesses are generally not considered a serious inconvenience. *Id.; see also Interfund Corp. v. O'Byrne*, 462 N.W.2d 86, 88 (Minn.App.1990) (concluding that deposition testimony can be used without disadvantage if witnesses cannot travel to forum). The enforcement of a forum-selection clause creates a serious inconvenience if it would result in two lawsuits involving similar claims or issues being tried in separate courts. *Personalized Mktg.*, 447 N.W.2d at 452.

 Appellant argues that filing suit in California would be unreasonable because this dispute is between Vieillard, a Minnesota resident, and itself, a Minnesota corporation. Appellant also points out that all of the witnesses and evidence are in Minnesota. But appellant could still "have his day in court" in California, and traveling expense does not necessarily render a location seriously inconvenient. Also, appellant may fully plead all of its claims in California, and appellant has not argued that it cannot afford to sue in California. In addition, Vieillard has consented to California's jurisdiction, so our decision will not cause split litigation.

### b. *Adhesion contract*

 An adhesion contract is one that is presented on a take-it-or-leave-it basis and is the product of unequal bargaining power. *Hauenstein*, 320 N.W.2d at 891. A contract's inclusion of boilerplate language is only one factor tending to point to an adhesion contract. *Id.* Other factors include the parties' sophistication, bargaining-power disparity, opportunity for negotiation, opportunity to obtain

the product elsewhere, and the product's status as a public necessity. *Personalized Mktg.*, 447 N.W.2d at 452. An agreement between parties with business experience is not the product of unequal bargaining power. *Interfund*, 462 N.W.2d at 89; *see also Hauenstein*, 320 N.W.2d at 891 (finding that business corporations presumably have personnel able to evaluate corporate agreements).

■ Appellant argues that the Authorization is "one-sided," "overweening," and grants no rights to appellant. Both parties freely signed the Authorization, and appellant exercised its bargaining power by turning down SGI's initial offer of employment in favor of becoming an independent reseller of SGI's products. Moreover, appellant had the opportunity to negotiate the terms of the Authorization, and thus it was not the product of unequal bargaining power. In fact, other resellers have negotiated the terms of the Authorization, and appellant alleges that it bargained for the Account Agreement-evidence that there was room to negotiate.

Appellant adds that the usual reasons for enforcing forum-selection clauses—such as freedom of contract, certainty, and convenience—do not exist here because the sole purpose of the clause is to secure tactical litigation advantages for respondents. We disagree. Appellant did not have to sign the Authorization; it could have sold similar products for competitors. Appellant also could have negotiated the Authorization's terms. And when signing the Authorization, appellant knew that any litigation would take place in Santa Clara County, California. Appellant also compares its 2000 sales of $925,000 with SGI's 2000 sales of $1 billion. *See Nelson v. Master Lease Corp.*, 759 F.Supp. 1397, 1401–02 (D.Minn.1991) (refusing to enforce a forum-selection clause in a dispute between an employee and an employer where the employer was a large corporation with the ability to protect its interests in any forum). But the employer-employee relationship is different from a business-to-business relationship because corporations are presumptively sophisticated parties, and appellant is a sophisticated party. In fact, appellant has sold computer products for 20 years, including two years as an independent reseller of IBM products. Finally, we note that SGI's products were neither unique nor a public or essential service.

### c. *Otherwise unreasonable*

■ A forum-selection clause is also unreasonable if its enforcement would contravene a strong public policy of the forum in which the suit is brought. *Interfund*, 462 N.W.2d at 89. Judicial economy and the prevention of multiple actions on similar issues are policies that can render a forum-selection clause patently unreasonable. *Id.*

Appellant argues that enforcing the forum-selection clause would violate Minnesota's public policy favoring unified resolution of multi-party disputes because Vieillard would remain a defendant in Minnesota. *See Personalized Mktg.*, 447 N.W.2d at 453 (stating that judicial economy and the prevention of multiple actions on similar issues may render a forum-selection clause unreasonable). But *Personalized Marketing* is distinguishable because that case involved more than 100 parties aligned into three groups raising five cross-claims and counterclaims in addition to the original claim. *Id.* at 449–50. Enforcing the forum-selection clause in *Personalized Marketing* would have required the district court to dismiss more than 90 cross-claims, which mostly involved small sums. *Id.* at 450. Furthermore, because Vieillard has consented to California's jurisdiction, litigating all

claims against all parties in California promotes judicial efficiency.

Appellant argues that a New Jersey case supports its position. *See Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.,* 146 N.J. 176, 680 A.2d 618, 627 (1996) (refusing to enforce the parties' forum-selection clause because it violated the state's franchise act and because such clauses are presumptively invalid absent evidence of separate consideration). New Jersey law has no application here, and appellant has never argued that the Authorization violates Minnesota's franchise act. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that appellate courts will not review matters not argued and considered in the court below).

## D E C I S I O N

We conclude that the forum-selection clause in the parties' Authorization governs appellant's claims based on the Account Agreement because those claims directly relate to appellant's right to sell SGI's products—a right conferred on appellant in the Authorization. Moreover, the district court did not abuse its discretion by enforcing the forum-selection clause because the clause is not unfair or unreasonable.

**Affirmed.**