*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2156**

Express Diagnostics, Inc.,
Appellant,

vs.

Phamatech, Inc.,
Respondent.

**Filed August 18, 2014
Reversed and remanded
Connolly, Judge**

Faribault County District Court
File No. 22-CV-13-257

Terry W. Viesselman, Viesselman & Barke, P.A., Fairmont, Minnesota (for appellant)

Peter G. Mikhail, Kennedy & Graven, Chartered, Minneapolis, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Schellhas, Judge.

### U N P U B L I S H E D   O P I N I O N

**CONNOLLY**, Judge

Respondent's motion to dismiss appellant's action was granted on the basis of a forum-selection clause in an agreement between the parties. Appellant challenges the dismissal, arguing that the clause does not apply to the transaction giving rise to its

complaint. Because we conclude that the clause does not apply, we reverse the dismissal and remand.

## FACTS

Respondent Phamatech Inc., is a California corporation that manufactures and supplies FDA-approved drug-testing diagnostic kits, maintains laboratories, performs tests on specimens, and provides test results to physicians. Appellant Express Diagnostics Inc. (EDI), an Iowa corporation with its principal place of business in Blue Earth, Minnesota, purchases drug-testing diagnostic kits and re-sells them to physicians, whom it refers to respondent for laboratory testing.

The parties had two written agreements. The first agreement, dated August 2, 2011, stated that: (1) respondent, the "service provider," would provide appellant, the "client," with laboratory tests, billing for laboratory services, materials necessary for collecting specimens, and timely results of specimen testing; (2) appellant would provide respondent with "management services;" and (3) respondent would pay appellant $40 per specimen test when the test fee was $200 or more and 20% of each test fee less than $200. The first agreement did not refer to dispute resolution or forum selection.

The second agreement, dated January 18, 2012, duplicated the first agreement in large part, but changed three terms to provide that: (1) respondent would provide products and services to appellant's referrals, not to appellant; (2) appellant would provide respondent with referral services, not management services; and (3) respondent would pay appellant three percent of all specimen test fees, not $40 for fees of $200 or

2

more and 20% for fees of less than $200. The second agreement also included this forum-selection clause:

> This Agreement shall be governed by and construed in accordance with the laws of the [state of] California. THE PARTIES AGREE THAT ANY CLAIM, CONTROVERSY OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE PERFORMANCE THEREOF SHALL BE ADJUDICATED BY A PROCEEDING IN A COURT IN SAN DIEGO COUNTY, CALIFORNIA [,] . . . OR . . . THE COURTS OF THE STATE OF CALIFORNIA AND THE FEDERAL COURTS SERVING SAN DIEGO COUNTY, CALIFORNIA[,] FOR SUCH CLAIMS, CONTROVERSIES OR DISPUTES.

Neither agreement referred to the other; neither agreement had a merger clause or stated that it represented the entire relationship between the parties; and neither agreement indicated that appellant would purchase from respondent testing supplies that appellant then re-sold to physicians whom it referred to respondent's testing services.

In October 2012, appellant's CEO sent an e-mail to respondent acknowledging that appellant was behind in its payment of respondent's invoices, claiming that some of the materials respondent supplied were defective, and asking respondent not to manufacture any more supplies until appellant's account was current.

In 2013, appellant brought this action against respondent in Minnesota, seeking both damages for breach of contract based in part on allegations that respondent had supplied defective materials and a declaratory judgment that appellant owed respondent nothing. Respondent brought an action against appellant in California and moved to dismiss the Minnesota action, in part, on the ground of the forum-selection clause. Appellant opposed the motion and sought an injunction preventing respondent from

pursuing the California action. Respondent's motion to dismiss was granted on the basis of the forum-selection clause. Appellant challenges the dismissal, arguing that the forum-selection clause does not apply.[1]

## D E C I S I O N

"Whether a forum-selection clause applies is a question of law, which this court reviews de novo." *Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc.*, 646 N.W.2d 904, 907 (Minn. App. 2002).

The second agreement states that "[respondent] is hereby appointed to provide to referrals [from appellant], and [respondent] hereby agrees to furnish to [those] referrals, the services provided herein . . . [including a]ll laboratory supplies and materials necessary for the collection and submission of specimens to the laboratory" and that "[respondent] will compensate [appellant] a referral fee . . . ." The second agreement also says that "[appellant] is to provide referral services to Physicians and [/] or Management Groups currently providing laboratory testing, to [respondent]" and enumerates the

---

[1] Because the issue here is the application, not the meaning, of the forum-selection clause and no ambiguity is alleged, the identity of the party that drafted the agreement is not relevant. *See Hilligoss v. Cargill, Inc*., 649 N.W.2d 142, 148 (Minn. 2002) ("A fundamental principle of contract law is that . . . ambiguous contract terms must be construed against the drafter."). However, the record supports the inference that respondent drafted the second agreement. When the district court asked respondent's general counsel, "[G]iven your adamant stance about having the forum-selection [clause] in [the second agreement], why wasn't it in [the first agreement,]?" counsel answered, "[M]ost of the other [a]greements that I'm involved in all have a forum-selection clause. I didn't see one in [the first agreement] and I asked . . . about it. It's very possible they said . . . we're changing the [agreement] . . . [and I said] I'm gonna include a forum-selection clause."

4

services. The second agreement says nothing about respondent selling or appellant purchasing testing supplies.

In its complaint, appellant said that: (1) it placed purchase orders with respondent; (2) many of the products respondent supplied were defective; (3) appellant suffered damages as a result; (4) appellant "terminated its supply relationship with [respondent]"; and (5) appellant "refused to make payment for the defective products." Because the allegations in the complaint refer exclusively to acts and things not mentioned in the second agreement, namely appellant ordering materials from respondent, respondent supplying defective materials, appellant suffering damages as a result of the defects in materials it purchased from respondent, a "supply relationship" between the parties, and appellant's payments to respondent, the transaction giving rise to the complaint did not come under the second agreement, and the forum-selection clause does not apply to it. *See W. R. Millar Co. v. UCM Corp.*, 419 N.W.2d 852, 853-55 (Minn. App. 1998) (holding that a forum-selection clause in one of the parties' agreements did not apply to a dispute occurring under another agreement).[2]

Respondent relies on *Alpha Sys.*, 646 N.W.2d at 908-09, (holding that forum-selection clause in authorization agreement applied to claims arising out of account agreement because claims were "premised on the right to resell [the authorizing

---

[2] Respondent argues that *W.R. Millar* is distinguishable because it involved a party who was a sales representative in the first agreement and an independent distributor in the second, and the second agreement did not incorporate the first. But the issue here is not whether the transaction underlying appellant's complaint came under the parties' first agreement or was independent of any agreement: in either case, the forum-selection clause in their second agreement would not apply.

company's] products – a right conferred on [the other company] by the [a]uthorization [agreement]").  But *Alpha Sys.* is distinguishable: here, the agreement containing the forum-selection clause involves only sales of respondent's products to third parties referred by appellant, not sales to appellant directly.

The forum-selection clause in the second agreement does not apply to the claims in appellant's complaint.  We reverse the dismissal of appellant's complaint and remand for proceedings consistent with this opinion.

**Reversed and remanded.**