*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1902**

Robert Allen Taylor Company, et al.,
Appellants,

vs.

United Credit Recovery, LLC,
a Delaware Limited Liability Company,
Respondent,

US Bancorp,
a Delaware corporation d/b/a U. S. Bank National Association,
Respondent,

Leonard G. Potillo, et al.,
Respondents.

**Filed October 3, 2016
Affirmed
Bratvold, Judge**

Hennepin County District Court
File No. 27-CV-13-11504

Steven L. Schechtman, Minnetonka, Minnesota (for appellants)

Thomas H. Boyd, Brooks F. Poley, Justin H. Jenkins, Kelly M. McBeain, Winthrop &
Weinstine, P.A., Minneapolis, Minnesota (for respondents)


Considered and decided by Bratvold, Presiding Judge; Halbrooks, Judge; and

Reyes, Judge.

**BRATVOLD**, Judge

Appellants Robert Allen Taylor Company (RATC) and RATC Lenders, LLC (RATC Lenders), challenge the dismissal of their claims against respondents United Credit Recovery (UCR) and US Bank, asserting that they sufficiently pleaded claims in their amended complaint. Because appellants contracted with UCR subject to a valid forum-selection clause, failed to state a claim against US Bank, and had the opportunity to amend their complaint, we affirm the district court's decision to dismiss the complaint with prejudice under Minnesota Rule of Civil Procedure 12.02(e).

**FACTS**

Between February and October 2009, RATC purchased three portfolios containing direct deposit account consumer debt (DDA debt) from UCR, a secondary debt collector and broker. RATC's goal was to collect upon the debt associated with the individual accounts in the portfolios and later resell any uncollected debt. RATC borrowed capital to purchase each portfolio from its network of lenders, to whom RATC marketed the transaction as an investment opportunity. RATC promised its investors "quarterly income payments targeted to equal 25% annually" and full payment within one year.

UCR purchased thousands of direct deposit accounts from US Bank and resold three DDA debt portfolios to RATC at a rate of approximately $.075 per $1 of consumer debt. UCR and RATC documented their transactions in written "purchase and sales agreements." Each sales agreement contained a forum-selection clause providing any dispute arising from the transaction would be resolved in a Delaware court under Delaware law.

RATC was frustrated in its efforts to collect on the three debt portfolios. In 2013, RATC and RATC Lenders[1] sued six defendants: UCR; US Bank; UCR manager Leonard Potillo; RATC founder Lionel Payne; Portfolio Management Group, LLC (PMG); and Regent Asset Management Solutions, Inc. (Regent). UCR and US Bank moved to dismiss the complaint, and the district court granted the motion without prejudice in December 2013. Appellants filed their amended complaint in January 2014, and the district court again dismissed it as to UCR and US Bank, this time with prejudice. In October 2015, appellants obtained a default judgment against Potillo and voluntarily dismissed their claims against PMG, Payne, and Regent. Appellants appeal, challenging the dismissal of their claims against UCR and US Bank.[2]

***Appellants' Amended Complaint***

In their amended complaint, appellants allege that respondents misrepresented the characteristics and quality of the three consumer debt portfolios and committed other misconduct in connection with the purchase transactions. Appellants assert that they learned in 2011 that respondents "wrongly failed to provide RATC with portfolios of 'zero-

---

[1]  In December 2010, individual lenders sued UCR and RATC founders Philip Gower, Brett Toyne, and Lionel Payne. In that action, the district court granted UCR's motion to dismiss and dismissed the lenders' claims without prejudice. After the lenders amended their complaint, the case was removed to federal court, where UCR again moved to dismiss. While the dismissal motion was pending, the lenders voluntarily dismissed their claims. The lenders then assigned their claims to a newly created limited liability company, RATC Lenders, an appellant in this matter.

[2]  Following oral argument, this appeal was submitted for decision, then stayed while appellants secured new counsel. The stay was dissolved, and the appeal again submitted for decision.

3

agency,' 'current' US Bank DDA debt"[3] and that, in some cases, UCR had held the accounts for more than two years before selling them to RATC. We address appellants' claims of misrepresentation and misconduct against US Bank and UCR in three categories.

### 1.    Marketing Presentation and Investment-Offering Documents

Appellants claim that US Bank and UCR were responsible for marketing materials used to attract potential lenders. Appellants allege that Payne and PMG prepared a marketing presentation and a loan-offering document that misrepresented the quality of debt portfolios that RATC would purchase, the interest rate RATC would pay on the borrowed funds, the manner by which the loans would be secured, and the manner in which the loans would be repaid to the lenders.[4] Relevant to this appeal, appellants assert that US Bank and UCR were responsible for the alleged misrepresentations because Payne and PMG were acting as "the undisclosed paid agents of UCR" and their misrepresentations were "made on behalf of, and with the prior knowledge and consent of US Bank Vice President Tate, UCR, and Potillo."

---

[3]  RATC explained that "zero-agency" refers to debt portfolios that have not previously been collected upon, and that "current" means an account transferred within 6 to 12 months of origination.

[4]  Specifically, appellants allege that the marketing materials contained the following misrepresentations: (1) that RATC would purchase "zero agency" consumer debt; (2) that the consumer debt would be purchased at a below-market price of 7.5%; (3) that UCR sold the US Bank accounts on a "pass-through basis"; (4) that a diversified group of collection agencies would be used to collect the debt and they would charge a fee of between 25 and 30% of collections; and (5) that all monies collected relative to the debt accounts would be transferred to RATC, less any collection fees owed. Regarding the investment-offering documents, appellants allege that they misrepresented each loan's interest term, interest rate, and the security provided to each lender.

4

## 2. Affidavits of Correctness

Appellants additionally allege that US Bank and UCR falsified thousands[5] of "affidavits of correctness," which verified the details of each individual account within the portfolios. Following the sale of each portfolio, UCR provided RATC with one affidavit of correctness per account. The affidavit documented the transfer of interest from US Bank to UCR and listed the US Bank direct deposit account number, borrower name, open date, charge-off date, and gross balance. Each affidavit was dated and appeared to be signed by a US Bank assistant vice president and notarized by a US Bank employee.

Appellants allege that the affidavits of correctness misrepresented the date on which US Bank transferred the accounts, the balances owed by the individual debtors, and the charge-off dates of the individual accounts. Appellants further claim that US Bank participated in creating the affidavits by assisting UCR to artificially insert a US Bank officer's signature and a US Bank employee's notarization into thousands of unsigned affidavits through a mail-merge program.

RATC sought to use the affidavits of correctness to verify the debts it owned and intended to collect upon, but could not do so because the Minnesota Attorney General obtained an order barring their use. Without the affidavits, RATC had to procure bank statements or other media to verify account details during the collections process, for which US Bank charged between $12 and $15 per account.

---

[5]  RATC claims it received 9,947 affidavits of correctness following its purchase of Portfolio 1; 8,670 affidavits of correctness following its purchase of Portfolio 2; and 9,056 affidavits of correctness following its purchase of Portfolio 3.

### 3.     Direct Pays

"Direct Pays" are defined by appellants as "monies voluntarily paid directly to creditors and collectors by debtors who are attempting to resolve their outstanding obligations." Appellants allege that respondents "received and wrongly retained monies collected and/or 'Direct Pays' received relative to the debt accounts contained in Portfolios 1, 2 and 3—said collections occurring both prior to and subsequent to the transfer of Portfolios 1, 2 and 3 to RATC." Appellants contend that all "direct-pay" payments should have been passed on to RATC. While the amended complaint does not state a specific amount of direct pays withheld, appellants allege that a "conservative industry estimate of revenue generated from 'Direct Pays' relative to Zero-Agency US Bank DDA Debt" was "more than $1,000,000" from 2009 to the present.

## D E C I S I O N

## I.     Forum-Selection Clause

Appellants argue that the district court abused its discretion by dismissing their claims against UCR pursuant to the forum-selection clauses in the purchase agreements for all three consumer debt portfolios.[6] We review the district court's decision to enforce a contract's forum-selection clause for abuse of discretion. *Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 889–90 (Minn. 1982); *Alpha Sys. Integ., Inc. v. Silicon Graphics, Inc.*, 646 N.W.2d 904, 909 (Minn. App. 2002), *review denied* (Minn.

---

[6] We note that UCR did not file a brief on appeal. Minnesota Rule of Civil Appellate Procedure 142.03 provides that "[i]f the respondent fails or neglects to serve and file its brief, the case shall be determined on the merits."

6

Oct. 15, 2002). But we review the district court's decision on whether a plaintiff's claim is encompassed within the terms of a forum-selection clause as a question of law. *Alpha Sys.*, 646 N.W.2d at 907. "When the trial court has enforced a forum selection clause, this court will affirm unless the forum selection clause is 'so unreasonable that its enforcement would be clearly erroneous and against both logic and the facts on record.'" *Interfund Corp. v. O'Byrne*, 462 N.W.2d 86, 88 (Minn. App. 1990) (quoting *Personalized Mktg. Serv., Inc. v. Stotler & Co.*, 447 N.W.2d 447, 451 (Minn. App. 1989), *review denied* (Minn. Jan. 12, 1990)).

Forum-selection clauses are enforceable unless a party can show that enforcement would be unfair or unreasonable. *Hauenstein*, 320 N.W.2d at 890. The Minnesota Supreme Court has set forth three factors to determine whether a forum-selection clause is unreasonable: (1) "the chosen forum is a seriously inconvenient place for trial;" (2) the underlying agreement is one of adhesion; or (3) the underlying agreement is otherwise unreasonable. *Id.*

Each of the three purchase agreements, which were attached to the amended complaint,[7] contain the same forum-selection language: "This agreement is entered into,

---

[7] UCR and RATC filed different versions of the three purchase agreements. In ruling on the motion to dismiss, the district court relied in part on the contracts UCR filed with its first motion to dismiss, which was extrinsic to the complaint. "Generally, the court may not consider extrinsic evidence on a motion to dismiss pursuant to Minn. R. Civ. P. 12.02(e). . . . [H]owever, the court may consider the entire written contract when the complaint refers to the contract and the contract is central to the claims alleged." *In re Hennepin 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 497 (Minn. 1995). Because the contracts were central to appellants' claims, the district court was permitted to consider them without converting the motion to dismiss into a summary-judgment motion. *Id.*

and shall be governed in accordance with the laws of the State of Delaware. Any action arising out of, or pertaining to this Agreement shall be commenced only in a court of competent jurisdiction in the State of Delaware." Applying the three-factor test, the district court concluded that Delaware is not a seriously inconvenient place for trial, the purchase agreements are not contracts of adhesion, and the purchase agreements are not otherwise unreasonable.

Before addressing the three-factor test, appellants assert that there is no valid written contract between UCR and RATC because UCR repudiated the purchase agreements with handwritten notations, and UCR did not affirm the validity of its written documents. The district court determined that at least one representative for each party had signed the contracts[8] and that appellants asserted the validity of the contracts by alleging that they relied upon representations and promises contained in the contracts.

We agree with the district court's analysis. First, appellants expressly assert the validity of the UCR purchase agreements because they claim that UCR is liable for numerous misrepresentations in the contracts. Second, the district court found that UCR's position in this litigation was that the DDA debt portfolios are governed by the written contracts; in other words, UCR affirmed the validity of the purchase agreements. Third, a comparison of the contracts appellants filed with the contracts UCR filed shows that each contract bears the signature of at least one principal of RATC. We agree with the district

---

[8] The contracts UCR filed with its motion to dismiss are signed, but much of the language is blocked out. Of the contracts filed by appellants with their amended complaint, the first is signed only by Payne, Toyne, and Gower; the second is signed only by a UCR representative; and the third is signed by representatives of both parties.

court that appellants do not raise a disputed fact question on the validity of the UCR contracts.

Turning to the three-factor test, appellants do not challenge the district court's analysis of two of the three factors. Regarding the third factor, appellants argue that the forum-selection clause is otherwise unreasonable because UCR has engaged in fraudulent conduct. Relevant case law suggests, however, that the fraud must be directly related to the forum-selection clause in order to be deemed unenforceable. In *M/S Bremen v. Zapata Off-Shore Co.*, which held a forum-selection clause enforceable, the Supreme Court noted that "[t]he correct approach would have been to enforce the forum clause specifically unless [the plaintiff] could clearly show that enforcement would be unreasonable or unjust, or that the *clause* was invalid for such reasons as fraud or overreaching." 407 U.S. 1, 15, 92 S. Ct. 1907, 1916 (1972) (emphasis added).

This view was indirectly confirmed by the Supreme Court in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772 (2010). *Rent-A-Center* concerned an employment contract that included a clause requiring arbitration of any enforceability dispute; the plaintiff argued that the contract was unconscionable and, therefore, the mandatory-arbitration clause should not be enforced. *Rent-A-Center*, 561 U.S. at 66, 130 S. Ct. at 2775. The Supreme Court noted that "arbitration is a matter of contract . . . on an equal footing with other contracts . . . [that] may be invalidated by generally applicable contract defenses such as fraud, duress or unconscionability." 561 U.S. at 67–68, 130 S. Ct. at 2776 (quotation and citations omitted). But the Supreme Court differentiated between a challenge to the validity of the mandatory-arbitration clause and a challenge to the entire

agreement on grounds of fraudulent inducement: "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." 561 U.S. at 70, 130 S. Ct. at 2778. The Supreme Court stated that the challenge must allege fraudulent inducement of the specific clause requiring arbitration in order for a court to deem it unenforceable. 561 U.S. at 71, 130 S. Ct. at 2778.

Read together, *Rent-A-Center* and *M/S Bremen* suggest that for fraud to invalidate a forum-selection clause or mandatory-arbitration clause, the party must establish fraud related to the clause that designates the forum. Here, appellants have not asserted that RATC's agreement to the forum-selection clause was fraudulently induced, only that the contract contains false representations.

Appellants' final argument is that enforcing the forum-selection clause is otherwise unreasonable because it would contravene judicial economy. Case law does not support appellants' position. In *Hauenstein*, the appellant sued Met-Fab, the Florida broker of industrial equipment from whom it purchased a press brake that did not operate as expected, seeking to revoke acceptance of the contract or rescind the contract and claiming damages for breach of warranty and misrepresentation. 320 N.W.2d at 887–88. The appellant obtained a default judgment against three defendants who failed to appear; Met-Fab, however, moved to dismiss the case based on a forum-selection clause in the parties' contract. *Id.* at 888. After the district court granted Met-Fab's motion, the appellant appealed, urging the supreme court to permit litigation of the claims in Minnesota, "either by invalidating the forum selection clause as against public policy or by striking down the clause as unreasonable under the facts of [the] case." *Id.*

After adopting the three-factor approach to forum-selection clauses, the supreme court addressed the appellant's argument that enforcement of the clause would be unreasonable because it contravened the public policy favoring the plaintiff's choice of forum. *Id.* at 891.[9] The supreme court reasoned that the case involved "a freely negotiated commercial contract between a Minnesota corporation and a Florida corporation" and that the selection of a Florida forum was "a reasonable effort to bring certainty to the transaction and to provide a presumably neutral forum experienced and capable in the resolution of commercial sales litigation." *Id.* It also noted that any inconvenience the appellant would suffer by litigating in Florida, as it contracted to do, "was certainly foreseeable at the time of contracting." *Id.* Accordingly, the court held that the appellant had failed to show that enforcement of the forum-selection clause was unreasonable. *Id.*

Similar to *Hauenstein*, enforcement of the forum-selection clause here affects only appellant RATC and respondent UCR. Appellants sued six defendants, but only two remain engaged in the action. Although the district court dismissed appellant RATC Lenders' claims against UCR, this decision is not challenged on appeal. Because this court affirms

---

[9] The appellant in *Hauenstein* urged the supreme court to extend the rule of *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.*, 308 Minn. 20, 240 N.W.2d 551 (1976), which held that "in complex multiparty litigation the policies supporting arbitration will be balanced against the interests of parties not subject to the arbitration agreement and the policies supporting joinder of all related parties and claims." 308 Minn. at 22, 240 N.W.2d at 552. The supreme court declined to extend *Prestressed*, concluding that the *Prestressed* rule "seeks to protect the interests of parties who are not signatories to the arbitration agreement; the parties in this case, who are situated similarly to the nonsignatory parties in *Prestressed*, have defaulted and are no longer part of the litigation . . . Moreover, the *Prestressed* rule is not intended to accord the party to an agreement a means of avoiding it, which is how appellant seeks to have it applied here." *Hauenstein*, 320 N.W.2d at 891.

the district court's decision to grant US Bank's motion to dismiss, no other litigants remain in this action. Further, any potential inconvenience of litigating in Delaware was foreseeable when RATC contracted with UCR for the debt portfolios. Thus, there is no support in this record to find the forum-selection clause unreasonable.

In sum, the district court did not abuse its discretion by giving effect to the forum-selection clause in dismissing appellants' claims against UCR without prejudice.

## II.  Claims Against US Bank

Appellants next assert that the district court erred in dismissing their claims against US Bank. We review de novo whether a party's complaint sets forth a legally sufficient claim. *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn. 2003). In reviewing the complaint, we consider only the facts alleged in the complaint. *Id.* We accept those facts as true and construe all reasonable inferences in favor of the nonmoving party. *Id.*

A complaint must "contain a short and plain statement of the claim" demonstrating that the plaintiff is entitled to relief. Minn. R. Civ. P. 8.01. While every averment in the complaint must be "simple, concise, and direct," no specific or technical form of pleading is required. Minn. R. Civ. P. 8.05(a). But parties alleging fraud must meet a heightened pleading standard. *Hardin Cty. Sav. Bank v. Hous. & Redevelopment Auth. of City of Brainerd*, 821 N.W.2d 184, 191 (Minn. 2012). "In all averments of fraud, . . . the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Minn. R. Civ. P. 9.02. "[A] pleading will be dismissed only if it appears to a certainty that no facts,

12

which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010) (quotation omitted); *see also Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014) (declining to adopt the federal plausibility pleading standard).

## A.      *Fraudulent-Misrepresentation Claim*

The Minnesota Supreme Court has equated fraudulent misrepresentation with fraud and applied rule 9.02. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000) ("Our case law establishes a high threshold of proof for such a claim."). Accordingly, appellants were required to plead their fraudulent-misrepresentation claim against US Bank with particularity. Appellants must have pleaded the ultimate facts amounting to fraud. *Hardin Cty. Sav. Bank*, 821 N.W.2d at 191. "A party pleads the 'ultimate facts' of a fraud claim when it pleads facts underlying each element of the fraud claim." *Id.*

"General allegations of fraud are insufficient to meet the requirements of Rule 9.02." *Stubblefield v. Gruenberg*, 426 N.W.2d 912, 914–15 (Minn. 1988). Although rule 9.02 does not specify what constitutes sufficient particularity, the Eighth Circuit has interpreted rule 9.02's federal counterpart, Fed. R. Civ. P. 9(b), to require parties to plead the circumstances constituting fraud with particularity; those circumstances "include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995). Simply reciting the elements of a claim is insufficient. *Stubblefield*, 426 N.W.2d at 914–15.

This court has articulated eleven specific elements for fraudulent misrepresentation.[10] Comparing the allegations of the amended complaint to these eleven elements, the district court concluded that appellants' allegations regarding the marketing presentation, the investment-offering document, and the affidavits of correctness lacked the requisite particularity.

On appeal, appellants highlight the pertinent paragraphs in the amended complaint that they contend establish their fraudulent-misrepresentation claim with sufficient particularity. They maintain that particularity is required only with regard to fraud claims, as stated in rule 9.02, and does not apply to appellants' claims for violation of the Minnesota Securities Act, conversion, theft, conspiracy, and promissory estoppel, even

---

[10] The eleven elements are:

> (1) There must be a representation[;]
> (2) That representation must be false[;]
> (3) It must have to do with a past or present fact[;]
> (4) That fact must be material[;]
> (5) It must be susceptible of knowledge[;]
> (6) The representer must know it to be false or, in the alternative, must assert it as of his own knowledge without knowing whether it is true or false[;]
> (7) The representer must intend to have the other person induced to act or justified in acting upon it[;]
> (8) That person must be so induced to act or so justified in acting[;]
> (9) That person's action must be in reliance upon the representation[;]
> (10) That person must suffer damage[;]
> (11) That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Nave v. Dovolos*, 395 N.W.2d 393, 397 (Minn. App. 1986) (citing *Weise v. Red Owl Stores, Inc.*, 286 Minn. 199, 175 N.W.2d 184 (1970)).

14

though the factual allegations for these claims overlap. They also assert that the district court relied on "federal case law from jurisdictions outside the Minnesota District and the 8th Circuit."

Appellants' arguments fail. First, the particularity requirement applies not only to *claims* of fraud, but to all *averments* of fraud under the plain language of rule 9.02. Averment is defined as "a positive declaration or affirmation of fact." Black's Law Dictionary 163 (10th ed. 2014). Therefore, even factual allegations sounding in fraud, such as appellants' claims against US Bank, must be pleaded with particularity because they are "averments." *Cf. Hardin Cty. Sav. Bank*, 821 N.W.2d at 191 (extending rule 9.02 particularity requirement to negligent-misrepresentation claim).

Next, we specifically address the sufficiency of appellants' allegations in each of the two categories relating to fraud—the marketing materials and the affidavits of correctness. First, the amended complaint alleges that US Bank is connected to the actions of Payne and PMG in drafting the marketing materials because they are "undisclosed agents" of US Bank, US Bank "indirectly compensated" Payne and PMG, and, "at all times relevant hereto," Payne acted with "prior knowledge, support and consent of US Bank." The amended complaint additionally alleges that Payne received compensation—which they refer to as "juice" or "flavor"—for enticing entities to purchase the consumer debt portfolios.

Fatal to appellants' claims, however, the amended complaint fails to allege that US Bank played a role in creating the marketing materials. The amended complaint instead states that Payne and PMG created the materials. Appellants further omit any factual

15

averments regarding the alleged agency between US Bank and Payne, the alleged "indirect compensation" of Payne, and how US Bank possessed "prior knowledge" of, supported, and consented to Payne's actions. The amended complaint alleges that US Bank gave its agents preferential pricing, but this allegation does not amount to fraud because US Bank's sale of the debt portfolios to UCR was legal. Further, the amended complaint states that UCR compensated Payne with "juice" or "flavor" for his role in inducing the sale but fails to allege any payment by US Bank. In other words, appellants' amended complaint only "vaguely attributes" the alleged fraud to US Bank and thus does not satisfy pleading requirements. *Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009); *see also Juster Steel v. Carlson Cos.*, 366 N.W.2d 616, 619 (Minn. App. 1985) (upholding the district court's determination that the appellant did not meet the rule 9.02 particularity standard because the complaint "facially assert[s] false representations" and only "vaguely refers to the content of the misrepresentations").

Second, regarding the affidavits of correctness, the amended complaint asserts that "US Bank Vice President Wilbur Tate provided his signature for, and participated in and consented to [their] creation." The complaint alleges that the affidavits specifically misrepresented the date the accounts were transferred from US Bank to UCR, the balances owed by the account holders, and the charge-off dates of the accounts.

As the district court noted, however, the amended complaint fails to state *which* defendant made the misrepresentations or how US Bank was responsible for providing Tate's notarized digital signature. As such, the amended complaint fails to identify "the who, what, where, when, and how of the alleged fraud." *U.S. ex rel. Joshi v. St. Luke's*

16

*Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (quotation omitted). Specifically missing is a description of how, when, or to whom Tate allegedly provided his signature. While the amended complaint asserts that US Bank provided one notarized signature with which to create an affidavit and asserts UCR's use of a mail-merge system, the amended complaint does not allege US Bank's participation or consent with specificity.

In sum, appellants have failed to specify US Bank's role in the alleged fraudulent misrepresentation by UCR. Appellants rely on what the district court referred to as "rhetorical devices" and conclusory accusations, attempting to link US Bank to any misrepresentations. These attempts are "general allegations of fraud," which are insufficient to meet the rule 9.02 heightened pleading standard. *Stubblefield*, 426 N.W.2d at 914.

### B.    The Minnesota Securities Act Claim

The amended complaint appears to invoke subsection 2 of Minnesota Statutes section 80A.68[11] and subsection b of section 80A.76.  Section 80A.76(b) imposes civil liability for the conduct prohibited by section 80A.68(2): selling a security "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made . . . not misleading." "Federal and Minnesota state courts have held that § 80A.01 (now §80A.68) is the state analogue to federal rule 10b-5 and

---

[11]   The Minnesota Securities Act has been revised over time. Section 80A.68 became effective in 2007, replacing section 80A.01, under which a "substantially similar action could be brought." *Merry v. Prestige Capital Markets, Ltd.*, 944 F. Supp. 2d 702, 709 (D. Minn. 2013). Thus, case law discussing section 80A.01 applies to a discussion of section 80A.68. *Id.*

therefore requires the same substantive elements of proof." *Merry*, 944 F. Supp. 2d at 709; *see also Minneapolis Emp. Ret. Fund v. Allison-Williams Co.*, 519 N.W.2d 176, 179–80 (Minn. 1994) ("The Minnesota Securities Act is patterned after federal law. The Act is to be construed so as to coordinate the interpretation of sections 80A.01 to 80A.31 with the related federal regulation." (quotations omitted)).

"At the pleading stage, a plaintiff asserting liability under Minn. Stat. § 80A.68(2) must allege: (1) a material misrepresentation or omission by the defendant; (2) negligence; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Merry*, 944 F. Supp. 2d at 709. Section 80A.68 "imposes a heightened pleading standard with respect to certain elements of proof. Specifically, while a plaintiff must plead falsity with particularity, the heightened pleading standard does not apply to the issues of materiality and loss causation." *Id.* (quotation omitted). Critically, "allegations must specifically identify each defendant alleged to have engaged in fraudulent activity," and "[a]llegations that do not specify which [d]efendant violated the law are not sufficiently particular." *Id.* at 710.

Here, the amended complaint alleges violations of the Minnesota Securities Act by "the actions of US Bank" in providing the affidavits of correctness, which fraudulently represented characteristics of each individual account in the debt portfolios. The district court concluded that the amended complaint did not meet the heightened pleading standard for the same reason that the allegations were deficient in alleging fraudulent misrepresentation. On appeal, appellants argue that "fraudulent conduct and/or malicious

18

intent are not requisite elements of a claim under the Act," and only "the negligent making of an untrue statement and/or the negligent omission of a material fact" is required.

Appellants' argument fails for at least three reasons. First, appellants have shifted from alleging fraudulent misrepresentation in the district court to alleging negligence in this court. Such a change in position is impermissible, because litigants are "bound [on appeal] by the theory or theories, however erroneous or improvident," they assert before the district court. *Annis v. Annis*, 250 Minn. 256, 262–63, 84 N.W.2d 256, 261 (1957). Second, because appellants seek to establish their Minnesota Securities Act claim using the same allegations found legally insufficient to support their fraud-based claims, the statutory claim also fails. *See Merry*, 944 F. Supp. 2d at 712 ("Under Minnesota law, any allegation of misrepresentation is considered an allegation of fraud that must be pled with particularity."). Third, even if we were to credit appellants' assertion that mere negligence is sufficient to establish a claim under the Minnesota Securities Act, the amended complaint fails because negligent misrepresentation also must be pleaded with particularity.[12] *Id.*; *Hardin Cty. Sav. Bank*, 821 N.W.2d at 191. Critically, appellants fail to cite legal authority to the contrary. Consequently, the district court properly dismissed appellants' claim under the Minnesota Securities Act.

---

[12] Minnesota law recognizes distinct claims for fraudulent misrepresentation and negligent misrepresentation. *Florenzano v. Olson,* 387 N.W.2d 168, 173 (Minn. 1986). "Fraud is distinguished from negligence by the element of scienter required." *Id.* (footnote omitted). But a misrepresentation, "whether negligent or fraudulent, constitutes fraud under Minnesota law." *Juster Steel*, 366 N.W.2d at 618.

### C. *Conversion and Theft Claims*

"Conversion is an act of willful interference with the personal property of another that is without justification or that is inconsistent with the rights of the person entitled to the use, possession, or ownership of the property." *Fawcett v. Heimbach*, 591 N.W.2d 516, 519–20 (Minn. App. 1999).

The amended complaint asserts two theories of conversion. First, it contends that US Bank refused to return the investment capital with which RATC purchased the consumer debt portfolios. Second, it asserts that US Bank retained "direct pays" related to the accounts contained in the consumer debt portfolios. Regarding the second theory, the amended complaint alleges that appellants received only ten percent of the expected amount of direct pays, and appellants "reasonably anticipate[d] that Defendants have received, and wrongly retained, more than $1,000,000 due and owing RATC." The complaint also alleges "based on industry experience" that US Bank, UCR, and Regent wrongfully received and converted "the majority" of the funds.

In challenging the district court's dismissal of its conversion claim, appellants argue that they have met the rule 8.01 notice pleading requirement. They assert that the district court improperly held their conversion claim to the rule 9.02 heightened pleading standard.

The district court's order and applicable case law do not support appellants' view. First, the district court dismissed both conversion theories under the rule 8.01 notice pleading standard because both theories rest on labels and legal conclusions in the amended complaint. As the district court noted: "The prohibition against pleading 'labels and conclusions' is not the heightened pleading standard; rather it is part of the lower pleading

20

standard under Rule 8.01." This is an accurate discussion of Minnesota case law. *Bahr*, 788 N.W.2d at 80 (applying rule 8.01 and stating that "a legal conclusion in the complaint is not binding on us. A plaintiff must provide more than labels and conclusions." (citations omitted)). Second, the amended complaint falls short of the heightened standard required for averments sounding in fraud, which is an apt description of appellants' first theory that the purchase price was wrongfully held because the amended complaint alleges that the purchase arose from fraudulent misrepresentations. Accordingly, dismissal of appellants' conversion claim was proper.

For the same reasons, the district court properly dismissed appellants' theft claim. "A person who steals personal property from another" is civilly liable for theft. Minn. Stat. § 604.14, subd. 1 (2014). The amended complaint alleges that respondents "have intentionally diverted, misused, and misappropriated" RATC assets "provided in exchange for the Portfolios, together with the assets collected in relation to said Portfolios, including but not limited to 'Direct Pays.'" Because appellants rely entirely on the facts alleged in their conversion claim to support their theft claim, the theft claim also fails.

### D.    *Unjust-Enrichment Claim*

"Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). The claimant must show more than the defendant's mere retention of a benefit at the claimant's expense; the claimant must show that the defendant has wrongfully retained the benefit. *Id.*

21

In challenging the district court's determination that they had not sufficiently pleaded this claim, appellants point to the allegations that US Bank "unjustly refused to return" the purchase price of the three debt portfolios, "unjustly withheld" direct pays, and "unjustly refused to return any portion of the monies received by them in exchange for the 27,500 worthless Affidavits of Correctness." Again, as with their conversion and theft claims, appellants' allegations are merely labels and conclusions. Because the allegations are legally insufficient to state a claim for which relief may be granted, the unjust-enrichment claim was properly dismissed.

### E.     *Promissory-Estoppel Claim*

Promissory estoppel "implies a contract in law where no contract exists in fact." *Deli v. Univ. of Minn.,* 578 N.W.2d 779, 781 (Minn. App. 1998), *review denied* (Minn. July 16, 1998). Such a claim "requires: (1) a clear and definite promise; (2) that the promisor intended to induce the promisee's reliance; (3) that the promisee relied on the promise to his or her detriment; and (4) that enforcement of the promise is necessary to prevent injustice." *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 246 (Minn. App. 2011), *review denied* (Minn. Aug. 16, 2011).

Appellants' amended complaint alleges that "defendants have made numerous specific promises," followed by the same labels and conclusions supporting their claim under the Minnesota Securities Act. On appeal, appellants assert that the district court improperly applied the rule 9.02 heightened pleading standard.

This argument misstates the district court's analysis because appellants' promissory-estoppel claim does not survive even the rule 8.01 notice pleading standard.

As the district court noted, appellants allege that Payne and PMG made specific promises. But appellants do not allege that US Bank made any "clear and definite" promises, a fatal flaw in their promissory-estoppel claim. This claim therefore fails and the district court did not err in dismissing it.

### F.    Conspiracy Claim

To establish civil conspiracy, a claimant must show that two or more people worked together to accomplish (1) an unlawful purpose or (2) a lawful act by unlawful means. *Harding v. Ohio Cas. Ins. Co.*, 230 Minn. 327, 337, 41 N.W.2d 818, 824 (1950). A conspiracy claim is properly dismissed when not supported by an underlying tort. *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. App. 1997). The district court dismissed appellants' conspiracy claim because appellants had failed to state a claim for any underlying torts.

Before this court, appellants first argue that their pleading was sufficient to state an underlying tort claim. As discussed above, we disagree. Second, appellants assert that the district court "ignored the fact that, at the time of dismissal, allegations of tortious conduct against Potillo and the other defendants remained and served to support the conspiracy claims." This argument fails because the facts pleaded do not sufficiently link US Bank to *any conduct* for which a tort claim could be proven. The district court properly dismissed appellants' conspiracy claim against US Bank for failure to state a claim.

**Affirmed.**

23